MARY HINES *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    December 9, 1907. — April 4, 1908.

Present : KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Negligence,* Elevated railway.

While reasonable time within which to board a train of an elevated railway should be given to passengers at a station, it is proper for a guard on the station platform to urge those who desire to get aboard to do so with expedition, especially when the train is crowded and there are a number of passengers at the station attempting to get aboard.

At the trial of an action of tort against an elevated railway company to recover for injuries received by the plaintiff, a woman twenty-one years of age, while a passenger upon an elevated train in Boston, by reason of her hand becoming caught in a door of a car, it appeared that the accident happened at about eight o'clock in the evening on August 18, that, just before the train, upon which the plaintiff was, arrived at a station, the car was crowded and the plaintiff was standing before a door which opened from the side of the car, and was holding on to an upright rod provided by the defendant for such use by passengers, that, when the train arrived at the station, the door was opened and a number of persons entered the car, passing by the plaintiff, that " the guard took them by the armful and pushed them in on top of the others," that the plaintiff thereby was caused to slip, and, putting out her hand to protect her small brother who was with her, placed it on the jamb of the door, and that the guard outside of the car on the platform of the station in closing the door closed it upon the first joint of one finger of that hand. There was no evidence that the guard saw the

plaintiff's finger in the jamb before he closed the door. *Held,* that there was no evidence of negligence on the part of the guard, since it was proper for him under the circumstances to urge the passengers, and he could not reasonably have anticipated that their hasty entrance would result in injury to the plaintiff, nor, at the time when he closed the door, that any person already in the car had placed a hand upon the door jamb.

TORT for personal injuries received by the plaintiff while a passenger of the defendant on a train in the subway in Boston. Writ in the Superior Court for the county of Suffolk dated November 18, 1904.

The allegations in the declaration as to the cause of the plaintiff's injury were as follows: "One of the defendant's agents and servants negligently, carelessly and improperly pushed a person who was boarding said train against the plaintiff and at or about the same time the side door of the car in which the plaintiff was was shut by one of the defendant's agents and servants in such a negligent, careless and improper manner that one of the plaintiff's hands became caught in said door."

There was a trial before *Aiken,* C. J. It appeared that the accident to the plaintiff happened at about eight o'clock on August 18, 1904. Other facts are stated in the opinion.

The presiding judge refused to direct a verdict for the defendant. The jury found for the plaintiff and, at the request of the parties, the presiding judge reported the case for consideration by this court, judgment to be entered on the verdict if his ruling was right; otherwise, judgment to be entered for the defendant.

*R. A. Stewart,* for the defendant.

*M. A. Sullivan,* for the plaintiff.

HAMMOND, J. At the time the plaintiff and her mother and young brother entered the car, which was the second or third car of the train, it " was somewhat crowded, but there was room enough for the plaintiff's mother to sit down and for . . . [two adult persons] to sit down next to her, then there was just room enough to put the boy on the end of the seat next to the centre door. By that time the seats were crowded. After the plaintiff's companions were seated, the plaintiff stood in front of the boy (and held him right there until the crowd commenced to come in). His left hand was toward the centre door, that is, he was

toward the rear of the train from the centre door, and at that time there were not many passengers standing in the car, although there were some. . . . From the time the plaintiff boarded the train until it reached Haymarket Square, she stood right near the rear of the centre door through which she entered the car, but at no time did she have hold of a strap. As the train proceeded toward Haymarket Square, passengers got in at the first stations and the car filled up gradually, although the plaintiff noticed nothing unusual about the number of people in the car until she got to Haymarket Square. At Haymarket Square there were a large number of people on the platform, as there had been at each station at which the train stopped, but when the train reached Haymarket Square there was not much spare room in the car in which the plaintiff was riding. When the plaintiff took her position near the rear end of the centre door, she was standing in the main aisle of the car in front of the very end of the seat which runs alongside of the car, reaching over the seat, holding on to the round rod that is at the side of the door. This rod is a perpendicular wooden rod about an inch or an inch and a half in diameter, with iron braces. This the plaintiff grasped with her right hand, and stood in this position from the time she boarded the train until it stopped at Haymarket Square, and the door near which she was standing was opened."

As to the accident the plaintiff testified that upon arriving at Haymarket Square " they opened the door to let passengers on, and they were getting on as quick as possible, and then the guard took them by the armful and pushed them in on top of the others — just took them and pushed them in. . . . The car was all crowded at that time." She further testified that she " should judge " that as many as fifteen people came by her as she was standing at the door with her hand upon the rod. In answer to the question as to the effect of the pushing upon her, she said : " Somebody first leaned on my back and then on my arm, and then I slipped, and I put my hand to protect the child, and then the door was shut; I had my hand on the iron rod, and when they pushed on me, my hand slipped and went in there (indicating), and I held my hand there for protection, and it was then that they banged the door." She also testified that the

place where she placed her hand as above indicated was " the
jamb of the door," and that " the handful that he pushed in
front of me was what jarred my hand loose." When the door
was " banged " to by the guard, one of the fingers of her right
hand was injured, " right from the nail above the first joint."

Passing over the question of the plaintiff's due care, we see in
all this no evidence of negligence of the defendant. The acci-
dent occurred at about eight o'clock on a summer evening, and it
is apparent that a great many people were at the various stations ;
and, while a reasonable time should be given to passengers within
which to board the train, yet it is proper to urge them. We do
not think that the guard whose business it was to close the door
could have reasonably anticipated that the hasty entrance of the
passengers would result in any harm to the plaintiff. Nor was
the act of shutting the door a negligent act. He saw that all
the passengers were in, and he had no reason to anticipate that
any passenger already in would place a hand on the jamb of the
door. Only about half an inch of the end of one of the plain-
tiff's fingers was there, and it is not shown that the guard saw or
ought to have seen it. It was his duty to shut the door as soon
as practicable. The case differs widely from *Carroll* v. *Boston &
Northern Street Railway*, 186 Mass. 97. In that case the atten-
tion of the conductor had been attracted to the plaintiff because
he had been talking with him only a moment before the acci-
dent, was close to him, and must have seen him in the doorway.
It was said in that case that " the jury were warranted in finding
that the conductor knew, or, if he had exercised due care would
have known, that the plaintiff's thumb was in the slot. There
was evidence that he was standing facing the plaintiff, not more
than twelve inches away from him, and that the plaintiff's hand
was about opposite his face." In that case the accident occurred
upon an ordinary electric street car, and on that account it was
said in the opinion that " the custom which exists in England
of having the doors of railway carriages on steam railroads
shut by the guard from the outside just before the train starts,
makes the English cases relied on by the defendant of no value
here."

But it is manifest that the English cases have a material bear-
ing as to the law to be applied to the present case. See among

others, *Maddox* v. *London, Chatham & Dover Railway*, 38 L. T. R. (N. S.) 458 ; *Richardson* v. *Metropolitan Railway*, L. R. 3 C. P. 374, n. ; *Metropolitan Railway* v. *Jackson*, 3 App. Cas. 193.

*Judgment for the defendant.*