CHARLES H. WORTHEN *vs.* GRAND TRUNK RAILWAY COM-
PANY.

Suffolk. March 14. — July 24, 1878. COLT & LORD, JJ., absent.

In an action by a passenger against a railroad corporation for personal injuries re-
ceived while in a train on the defendant's road, it appeared that the injury was
caused by the train running into another train at a station. The plaintiff testified
that the train was running at an unusual rate of speed, and that for several miles
before it reached the station it was racing with a train on a parallel road. The
defendant, in order to show that the train was running at the usual speed, asked a
witness whether the train was running at the usual speed as it approached the sta-
tion. The judge refused to admit this evidence, unless the defendant also under-
took to show that such usual speed was a safe and proper rate of speed, such as
was usual upon well-conducted railroads; and the defendant excepted. *Held*, that
this evidence should have been admitted.

A passenger in the car of a railroad corporation, on approaching the station to which
he was going, left his seat and stood beside it, with his hand on the knob or on the
edge of the door of the car, which had been open for some time. While he was
so standing, the car came into collision with another car, and the passenger was
thrown out on the platform and injured. *Held*, in an action by him against the
railroad corporation, that the question, whether he was in the exercise of reason-
able care, was for the jury.

TORT against a common carrier, for personal injuries occa-
sioned to a passenger, by the alleged negligence of the defend-
ant. Answer: 1. A general denial. 2. That the plaintiff was
not in the exercise of due care. Trial in this court, before
*Lord*, J., who allowed a bill of exceptions in substance as fol-
lows:

The plaintiff was injured by the collision of an express train
on the defendant's road, in which he was riding, with an accom-
modation train standing on the same track, at the depot at De-
troit Junction in Michigan, at which depot the train on which
he was riding was to stop, and he was to change cars.

The plaintiff testified that the train, on which he was, was
running at an unusual speed, much faster than he had been ac-
customed to ride on the defendant's road; that it did not stop at
a crossing of the Bay City road, three miles distant from Detroit
Junction; that from the Milwaukee Junction, five miles distant
from the Detroit Junction, the train was racing with a train on
the Michigan Southern road, which was parallel with the defend-
ant's road, and was in sight all the way; that, as they approached

the Detroit Junction, and within one or two miles of it, the con-
ductor took up the plaintiff's ticket and said to him, " You will
change cars at the next stopping place ; " that, the front door of
the car being open, he went out upon the front platform of the
car and looked to see how near they were to the junction, and
looked at the trains racing, returned into the car and got his bag-
gage ready, and placed it on the front seat, on which he had been
sitting, ready to be taken up when the train should stop; that he
stood beside his seat, within a step or so of the door, with his
hand holding either on the knob of the door or on the edge of
the door, which still remained open ; that the cars, instead of
stopping at the point where they ought to have stopped, went
forward with great velocity and came into collision with a train
standing on the track ; that the shock of the collision was so
great as to throw him out on the platform, and, holding on to
the door, he was thrown around so as to bring his back next to
the window, at the same time that the platform of the smoking-
car ahead of him was driven over the platform of the car on
which he was thrown, and, the railings of the cars being forced
against him, forced him through the window and caused the in-
juries complained of.

The engine-driver testified that the Smith patent steam-vac-
uum brake, which was used on the train, failed to work so as to
stop the train before it struck the other train ; that the train had
been examined at Port Huron, sixty miles distant; that this
steam-vacuum brake was an approved brake, and worked at every
other station, stopping the train promptly ; that at the Bay City
road crossing the cars came to a full stop ; that when the patent
air-brake did not work, he sounded the whistle for down brakes,
which were applied, and the engine reversed; that the train was
not racing with the train on the Michigan Southern road ; and
that the express train usually followed the accommodation train,
which it struck, into the station at an interval of ten minutes
after the accommodation train got there, to give it time to
change passengers and baggage, and go forward.

There was evidence tending to show, on the part of the plain-
tiff, that the train was running at an unusual speed when it came
to the station ; that the rules of the road in regard to signals had
not been followed ; and that the rubber hose of the steam-vacuum

brake was not in order; all of which evidence, which was contro-
verted by the defendant, was submitted to the jury on the ques-
tion of negligence.

The defendant then proposed to ask the conductor whether
the train was running at the usual speed at this point, as it ap-
proached Detroit Junction, in order to show that it was running
at the usual speed, the witness having already testified what that
speed was. The plaintiff objected to his testifying whether it
was the usual speed, on the ground that, for aught that appeared,
the defendant usually ran its train at an improper speed. The
judge ruled that the defendant could not show that it was run-
ning the train at the usual speed, unless it also undertook to
show that such usual speed was a safe and proper rate of speed,
such as was usual upon well-conducted railroads; and the de-
fendant excepted.

Among other instructions, to which no exceptions were taken,
the judge instructed the jury that if the plaintiff, at the time of
the injury, was not exercising reasonable care and caution, and
the want of such reasonable care and caution caused, or contrib-
uted to cause, the injury, he was not entitled to recover; and
that, as a matter of law, it would not be reasonable care and
caution to stand upon the platform of a running car.

The defendant further requested the judge to instruct the jury
that it is not, as a matter of law, reasonable care and caution to
stand in the open door of a moving car, or to stand so near an
open doorway of a moving car as to be thrown upon the plat-
form. This instruction the judge declined to give; but in-
structed the jury that if the plaintiff was standing inside of the
car before the open doorway, it was a question for them to say
whether a man in that position was in the exercise of reasonable
and proper care; and that they must be reasonably satisfied,
taking all the evidence together, that he was at the time within
the car, and was in the exercise of that reasonable care which
his situation, at that particular time, and those circumstances
required of him.

The jury returned a verdict for the plaintiff for $18,335; and
the defendant alleged exceptions.

*J. Rand* (of Maine) *& R. D. Smith,* for the defendant.

*E. L. Barney,* for the plaintiff.

MORTON, J.    The plaintiff was injured by a collision at the depot at Detroit Junction.   He testified that the train in which he was riding was running at an unusual rate of speed, and that for five miles before it reached Detroit Junction it was "racing with a train on the Michigan Southern road, which was parallel with the defendant's road and was in sight all the way." We are of opinion that the question proposed by the defendant to its conductor, whether the train was running at the usual speed at this point, should not have been excluded.    It is true that the fact that the defendant was running at the usual rate of speed would not be a defence, unless it appeared that such rate was a safe and proper rate of speed; but the testimony excluded would contradict the plaintiff's testimony, and would tend strongly to show that the train was not racing with the train on the parallel road.    It thus bore upon a question which would undoubtedly be influential with the jury in deciding the issue of the defendant's negligence.

We see no ground of objection to the other rulings at the trial.    The question, whether the plaintiff was using due care, was a question for the jury, and was submitted to them with instructions which were sufficiently favorable to the defendant.

*Exceptions sustained.*