PATRICK J. CROWLEY *vs.* BOSTON ELEVATED RAILWAY
COMPANY.

Suffolk.   November 16, 1909. — January 7, 1910.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Negligence*, Elevated railway.   *Evidence*, Competency.   *Agency*.

In an action against a corporation operating an elevated railway for personal injuries caused by falling from the rear platform of a car forming part of an elevated train of the defendant through the open space at the end of the platform, from which a brakeman had taken down the chain used as a barrier and had not replaced it, the plaintiff, upon the issue of the defendant's negligence, may put in evidence a rule of the defendant which was in force at the time of the accident in regard to the hooking up and releasing of platform chains.

In an action against a corporation operating an elevated railway for personal injuries caused by falling from the rear platform of a car forming part of an elevated train of the defendant through the open space at the end of the platform, from which a brakeman had taken down the chain used as a barrier and had not replaced it, the plaintiff had put in evidence a rule of the defendant in regard to the hooking up and releasing of platform chains, and offered to prove by a former employee of the defendant that the defendant had in its employ a person whose duty it was to instruct the brakemen as to their duties and the necessity of keeping the chain across the space fastened, and that such person repeatedly told the witness that the purposes of keeping the chain fastened and the necessity for doing so were to prevent people from passing from one car to another and to prevent passengers who were riding on the platforms from falling off or being thrown off while the cars were in motion.   The presiding judge ruled that the evidence was not competent.   *Held*, that the ruling was correct, as the offer was not to show that these statements were instructions to the witness as to his duties, but that so far as appeared the statements were made to the witness in general conversation, and no employee can bind his employer by such bare statements unless he is the agent of his employer for that purpose.   The court did not find it necessary to consider whether the evidence would have been admissible if the statements had been made in the course of and as a part of instructions given to the witness in the performance of the duty of the person making the statements after the defendant's adoption of the rule.

In an action against a corporation operating an elevated railway for personal injuries caused by falling from the rear platform of a car forming part of an elevated train of the defendant through the open space at the end of the platform, from which a brakeman had taken down the chain used as a barrier and had not replaced it, the only evidence relied on by the plaintiff to show negligence on the part of the defendant was the act of the brakeman in taking down the chain and failing to replace it, followed by the starting and lurching of the car.   It appeared that the train had nearly reached a terminal elevated station of the defendant, and had stopped in a proper manner with a part of the cars, including that on the platform of which the plaintiff was standing, upon a curve just outside the station, waiting for the signal that the track was clear for all

the cars to enter the station, that the brakeman then announced the station, as it was his duty to do, and for this purpose it was necessary for him to take down the chain in question and also the chain across the front platform of the car next behind, in order that he might go from one car to the other to make the announcement in each of them, that it was his regular practice to do this, as the plaintiff knew, and that when the car was in the station the chains were to be left open to afford access there from one car to another. The plaintiff testified that the car started slowly, and then that it started up with a lurch, when the accident occurred. A rule of the defendant was put in evidence, which provided that the chains between the cars "must be hooked up at all times when running between stations," and that "care must be taken at all times to have chains adjusted so as not to cause accidents." The presiding judge ordered a verdict for the defendant. *Held*, that the fact that the brakeman left the chains open while the train was entering the station was not evidence of negligence, this being merely a reasonable preparation to avoid the necessity of a delay to travellers ; that the train was not "running between stations" within the meaning of the rule, as it practically had arrived at the station ; that the last sentence of the rule as quoted above required merely such care in the adjustment of the chains that their presence should not cause accidents, and that the object of the rule was to guard passengers from injury by preventing them from passing from car to car while the train was in motion rather than to fence the platform to prevent passengers from falling from it; that the testimony of the plaintiff in regard to the train starting with a lurch did not indicate that this was anything more than is naturally and ordinarily to be expected in the operation of steam and electric cars, and that a verdict rightly was ordered for the defendant.

TORT for personal injuries sustained when the plaintiff was a passenger on an elevated train of the defendant. Writ dated July 2, 1906.

The second count of the declaration, upon which the case was tried, was as follows :

" And the plaintiff says that on or about October 12, 1905, the defendant was a corporation operating trains of cars upon an elevated structure in the city of Boston, in the county of Suffolk, in said Commonwealth. That on or about October 12, 1905, the plaintiff was a passenger for hire, and in the exercise of due care, and was riding on the rear platform of an elevated car which was part of a train operated and controlled by said defendant, its agents or servants. That on the platform of said car was a safety device, to wit, a chain, the design, use and purpose of which was to be stretched across the open space on said platform, and so fastened as to prevent persons riding on said platform from being thrown or falling from said platform while the car was in motion. That by reason of the negligence of the defendant, its agents or servants in failing to have said

chain properly fastened across the open space on said car, while said car was entering upon and running around a sharp curve on the elevated structure, and at a time when the rate of the speed of the train or car was increased, the plaintiff, by reason of the sudden increase of speed, and by reason of the failure to have the aforesaid chain properly fastened so as to serve its proper use and purpose, was thrown from said car upon the elevated structure, causing him severe bodily injuries, and great pain both in mind and body, whereby he was put to great expense for nursing, medicine and medical attendance, and was prevented for a long time from attending to his usual or any business, and was deprived of his income, earnings and profits to a large amount, all to his great damage."

The answer was a general denial.

In the Superior Court the case was tried before *Sherman,* J.

The facts not in dispute were as follows: The accident happened at about 4.56 P. M. on October 12, 1905.   The plaintiff at the time of the accident was about twenty-one years old.   He then resided and for a long time had resided in Malden, where he was employed as a laborer.   At about noon on the day of the accident he came into Boston and attended a ball game on the Huntington Avenue grounds.   After the game he travelled by surface cars and in the subway to the North Station, and after spending a certain time in that neighborhood, during which some details of his conduct were in dispute, he took an elevated train at the North Station bound for the defendant's Sullivan Square terminal station.   The train consisted of five cars of the type of which a considerable number were then in use by the defendant, not vestibuled, but with gates and other appliances.   He rode upon the back platform of the fourth car.   This train, like other five-car trains, was provided with a motorman, a guard, and two brakemen.   The usual position of the guard was upon the front platform of the second car; the usual position of the first brakeman was upon the front platform of the third car; and the usual position of the second brakeman (in this case one Satterly) was upon the front platform of the fifth car.   It was the duty of brakemen to announce stations in both cars.

On the elevated structure outside the entrance of the Sullivan Square station was a semaphore signal.   Trains approaching

this signal would " slow down " and stop unless the green circle, which indicated that it was safe to proceed, was down, in which case they would start up again and proceed into the station. Otherwise they would wait until the signal indicated that the tracks inside of the station were clear, and that it was safe to proceed. On the elevated structure on the left of the track, and a little beyond the semaphore signal, was a small switch tower. From the entrance of the station to the semaphore signal, or slightly beyond, was a distance equal to the length of three cars.

The cars on this train were not " easy access " cars, that is to say, cars vestibuled and between which passing is not permitted; but on each end of the cars composing this train a portion of the platform was partly enclosed. The portion of the platform thus partly enclosed was intended for the motorman's cab when the car happened to be the first car of any train, but otherwise was available as standing room for passengers.

On each platform of cars of this type was a chain capable of being hung across the portion of the platform from the motorman's cab to an iron post on the other side of the platform, or of being hooked from its ring on the side of the motorman's cab to a hole in an iron upright on the platform of the car behind. Unless both chains were so hung, it was impossible to pass from car to car.

The plaintiff's train on approaching the semaphore signal stopped and shortly afterwards started up again, and the accident happened just after it had started, and at a time when the rear platform of the fourth car was being moved to the left by passing around the curve just before reaching the switch tower. The plaintiff fell from his position on the platform, and in his fall caught the hog chain which ran from a hook underneath the front platform of the fifth car.

It was not denied that the employees on the train stopped the train as soon as possible after the plaintiff's fall.

The defendant did not deny that, although there was a sign on the platforms of cars like the car on which the plaintiff was riding forbidding passengers to ride on the platforms, the prohibition on the sign was not enforced on the day of the accident, and had not been enforced for some time previous thereto, so

that passengers had ridden on the platforms of cars like the one in question for a year or two before the accident.

At the close of the plaintiff's testimony the plaintiff, against the defendant's objection and exception, was permitted to introduce in evidence a rule of the defendant which it was admitted had been issued by the defendant to the employees on its elevated division on July 10, 1905, and was in force at the time of this accident. The rule was as follows:

"118. Platform chains. All platform guard chains at front and rear end of trains must be kept hooked up at all times. Between cars only the top chain on each car will be used, and these must be hooked up at all times when running between stations. While standing at stations they must be released and hooked across into top eye on platform of adjoining car, except that on easy access cars chains are not to be released at stations, and persons must not be permitted to pass from one car to another. Care must be taken at all times to have chains adjusted so as not to cause accidents."

One Reardon, a former employee of the defendant, was called by the plaintiff as a witness. The plaintiff made the following offer of proof: " I offer to prove by the witness Reardon that the defendant had in its employ one Benjamin whose duty it was to examine the brakemen as to their qualifications and fitness to operate cars and instruct them as to their duties and the necessity of keeping this top chain across the space fastened, and that this man Benjamin repeatedly told the witness that the purposes for keeping that fastened and the necessity for the same was to keep people from passing from one car to another and to prevent passengers who were riding on the platforms from falling off or being thrown off while the cars were in motion." The judge ruled that the evidence offered was not competent.

At the close of the plaintiff's evidence the judge ordered a verdict for the defendant, and the parties entered into a stipulation in accordance with which the judge reported the case for determination by this court. If in the opinion of this court the case ought to have been submitted to the jury upon the evidence admitted and upon the evidence offered by the plaintiff, if that was competent, judgment was to be entered for the plaintiff in the sum of $4,000; otherwise, judgment was to be entered on the verdict.

*E. L. McManus,* for the plaintiff.

*W. G. Thompson,* (*S. H. E. Freund* with him,) for the defendant.

SHELDON, J. The defendant does not contend that the plaintiff's injury was due to any negligence of his own, or that he was bound by the rule of the defendant formerly in force forbidding passengers to ride on the platforms. That rule had been practically abandoned by the defendant. *Sweetland* v. *Lynn & Boston Railroad,* 177 Mass. 574. *Feneff* v. *Boston & Maine Railroad,* 196 Mass. 575, 577. The only questions presented are whether the rule of the defendant as to platform chains was properly admitted; whether Reardon should have been allowed to testify to Benjamin's statements as to the purpose and necessity of keeping those chains fastened; and whether upon all the competent evidence the jury would have been warranted in finding for the plaintiff.

1. We are of opinion that the rule was rightly admitted in evidence. *Stevens* v. *Boston Elevated Railway,* 184 Mass. 476. *Burns* v. *Worcester Consolidated Street Railway,* 193 Mass. 63. The rule was in force at this time. The plaintiff's case was not all in when the rule was offered, and it could not have been said that the rule would have no bearing upon the issues. It constituted one of the means relied upon by the plaintiff to show negligence in the defendant, and the circumstances then in evidence indicated that it might become material for that purpose. Its legal effect in connection with the other evidence must be considered hereafter.

2. We are of opinion that Reardon's testimony of Benjamin's statements as to the purpose of the chains and the necessity of keeping them fastened was rightly rejected. The offer was not to show that these statements were instructions to Reardon as to his duties, but simply that they were statements repeatedly made by Benjamin apparently merely in general conversation. No employee can bind his employer by such bare statements, unless he has been made its agent for that purpose. *Conklin* v. *Consolidated Railway,* 196 Mass. 302, 306. *Wellington* v. *Boston & Maine Railroad,* 158 Mass. 185, 186. *Proctor* v. *Old Colony Railroad,* 154 Mass. 251. *Boston & Maine Railroad* v. *Ordway,* 140 Mass. 510. *Fogg* v. *Pew,* 10 Gray, 409. We need not

consider whether this evidence would have been admissible if Benjamin's statements had been made in the course and as a part of instructions given in the performance of his duty to Reardon after July 10, 1905, when the rule which was put in evidence was issued.

3. The only negligence of the defendant relied on by the plaintiff was the act of its brakeman in taking down the chain which went across the open space of the platform and not replacing it, followed by the starting and lurching of the car. We are of opinion that the defendant's servants are not shown to have been negligent in either of these respects.

It is undisputed that the train had nearly reached the Sullivan Square station, if indeed the forward car had not fully done so, and had properly stopped with some of its cars, including that upon the platform of which the plaintiff was standing, upon the curve just outside the station, waiting for the signal that the track was clear for all the cars to enter the station. It became then the duty of the brakeman to announce the station, and he did so. For this purpose it was necessary for him to take down both this chain and the one on the front platform of the rear car, in order that he might go from one car to the other and make the announcement in each of them. It was his regular practice to do so in this way, as the plaintiff knew. In the stations, the chains were to be as he now left them, to afford there access from one car to another. We cannot say that it could be found to have been negligent for him to leave them in that position while the train was entering the station. This comes under the same principle as the decision heretofore made by us that it is not negligent for the defendant's servants to begin to open the doors of the cars before the train has actually stopped. *Hannon* v. *Boston Elevated Railway,* 182 Mass. 425. In each case what is done is merely a reasonable preparation to facilitate rapid transit by avoiding the necessity of delay to travellers. This is the reasoning adopted in *Hines* v. *Boston Elevated Railway,* 198 Mass. 346. Nor is there anything in the rule of the defendant which is inconsistent with this view. The train was not at the time running between stations within the meaning of the rule. It had practically arrived at its station. The last sentence of the rule requires merely such care

in the adjustment of the chains that their presence shall not of itself cause accidents, as for example, by catching upon the clothes of passengers or being allowed to fall against any one. It was not the manner of adjustment that was complained of here, but the fact that the chain was not placed across the open space at the end of the platform. Indeed, the object of the rule was to guard passengers from injury by preventing them from passing between the cars while the train was in motion rather than by barring or fencing a platform to prevent falling therefrom.

No negligence is shown by the evidence of a lurch of the car. There is nothing to indicate that this was anything more than is naturally and ordinarily to be expected in the operation of steam or electric cars. *Foley* v. *Boston & Maine Railroad*, 193 Mass. 332. *Partelow* v. *Newton & Boston Street Railway*, 196 Mass. 24, 30, 31. *McGann* v. *Boston Elevated Railway*, 199 Mass. 446. *Hunt* v. *Boston Elevated Railway*, 201 Mass. 182. This case does not come within the doctrine of *Lacour* v. *Springfield Street Railway*, 200 Mass. 34, or *Cutts* v. *Boston Elevated Railway*, 202 Mass. 450. The plaintiff testified that the car started slowly, and then that it started up with a lurch. There was no claim of any sudden starting either in the declaration or in the evidence.

In our opinion, the verdict for the defendant was rightly ordered; and there must be

*Judgment on the verdict.*