JULIA J. LARSON *vs.* BOSTON ELEVATED RAILWAY COMPANY.
CANUTE B. LARSON *vs.* SAME.

Suffolk.     March 29, 1912. — June 4, 1912.

Present: RUGG, C. J., MORTON, BRALEY, SHELDON, & DeCOURCY, JJ.

*Negligence,* Elevated railway.     *Damages,* In tort.

In an action by a woman against a corporation operating an elevated railway for personal injuries sustained when the plaintiff was a passenger in a car on a train of the defendant from the hand of the plaintiff being caught between a sliding door of the car and the casing into which the door opened, if it appears that as the train was approaching a station the plaintiff left her seat and walked to the door of the car when a lurch of the car threw her against the door and that by an involuntary act she put her hand upon the casing of the door to steady herself, the question whether the plaintiff was in the exercise of due care is for the jury.

The fact that a car of a train on an elevated railway as it was nearing a station gave a severe and sudden lurch, which caused a passenger who was preparing to leave the car to put his hand involuntarily upon the casing of the door for support, although it is not in itself evidence of negligence in the operation of the train, is evidence of notice to the servant of the railway company in charge of the door that passengers who had come or were coming to the door for the purpose of leaving the car might be thrown against it and involuntarily might seize any support within their reach, so as to make it the duty of such servant to refrain from opening the door until he was assured that no one would be hurt by it.

In an action for personal injuries against a corporation operating an elevated railway, where the superintendent of the elevated division of the defendant's railway was called as a witness by the plaintiff and testified, without exception, that certain oral instructions were given to the guards and brakemen employed upon the defendant's elevated trains, it was *said* that the question how far such evidence would have been admissible, against exception, for the purpose of showing negligence of the defendant was an open one.

In an action by a married woman against a corporation operating an elevated railway for personal injuries sustained from the plaintiff's hand being caught between a sliding door of a car of the defendant and the casing into which the door opened, there was evidence that at the time of the accident the plaintiff was pregnant and that by reason of the accident a miscarriage occurred, from the results of which the plaintiff became very weak, and that about six months after the accident it was found that she was suffering from tuberculosis. There was testimony

of an expert that the plaintiff's weakened condition was very favorable to the development of tuberculosis. The jury found in answer to a special question that the tuberculosis was directly attributable to the injury received by the plaintiff in having her hand caught in the car door. *Held*, that, if the tuberculosis was induced by the plaintiff's weakness caused by the accident without any other intervening cause, it was a proper element of damage, and that, if at the time of the plaintiff's injuries there were germs of tuberculosis in her system, and if the direct consequence of her injuries was to lessen her general health and to reduce her power of resistance to the effects of the germs and solely by reason thereof the tuberculosis which had been latent in her system became developed into an existing disease, the jury would have a right to find that the tuberculosis was a direct and immediate result of the plaintiff's injuries and to assess damages for it.

TWO ACTIONS OF TORT, the first by a married woman for personal injuries sustained by her on September 18, 1909, when she was a passenger in a car of a train of the defendant at the Northampton Street station in Boston of the elevated railway operated by the defendant, from the plaintiff's hand being caught between the sliding side door of the car and the casing into which the door opened, by reason of the alleged negligence of the servants of the defendant, and the second action by the husband of the plaintiff in the first action for consequential damages. Writs dated October 12, 1909.

In the Superior Court the cases were tried together before *Pratt*, J. The plaintiff in the first case (who hereafter is referred to as the plaintiff) did not contend that there was any defect in the condition of the door or that the manner in which the train came to a stop was in itself evidence of negligence in the operation of the train. The plaintiff testified as follows: "Well, when the train was nearing Northampton Street I got up from my seat to get to the door and when I got to the door the car gave an awful sudden and severe jolt and threw me right against the door and I put my right hand out to save me and my hand went right into the door."

One Pasho, the superintendent of the elevated division of the defendant's railway, called as a witness by the plaintiff, testified that the doors on the elevated trains were operated by air with a valve at the end of the car and that the brakemen or guards on the trains controlled the air which shut the doors. He testified that brakemen and guards were instructed to look at the part of the car in which a door was before opening it, and that they were

instructed not to open or close the doors before the train had stopped. This witness, against the objection and exception of the defendant, testified, from a book of rules of the defendant "for the government of employees," which was in force at the time of the accident, to the following rule:

"Gates and Doors." Rule 91. "Every precaution must be taken to avoid accidents. Gates and side doors must never be opened so that passengers can board or leave a moving train, nor must trains ever be started until gates and side doors have been properly closed and all necessary signals given. In all cases of doubt adopt the safe course. Great care must be used in operating gates and doors so that passengers will not be struck or their clothing caught by same.

"Passengers should be induced to leave car by the side doors and enter by the end doors, provided doors and gates stop abreast of the same place on station platform. Passengers wishing to leave train must be allowed to do so before others are permitted to board."

The second paragraph of the rule numbered 99 in the book was admitted in evidence, subject to the defendant's exception. It was as follows: "Always face the door when closing it in order to avoid shutting it against a person's hand or clothing; never slam the door but use care to open and shut it noiselessly."

The plaintiff and her husband both testified that the door opened while the train was moving. There was evidence that the guard or brakeman who operated the door that injured the plaintiff opened it without looking at the door.

There was evidence that before the accident the plaintiff was strong and well, weighing one hundred and fifty-two pounds, that at the time of the accident she was pregnant, that by reason of the accident a miscarriage occurred, from the results of which the plaintiff became very weak and was reduced in weight to one hundred and twenty pounds, and that about six months after the accident it was found that she was suffering from tuberculosis.

The hypothetical question put to the witness Dr. Hawes and admitted against the defendant's exception, referred to in the opinion, concluded as follows: "I want to know whether that condition of a woman which I have pictured to you would be a favorable condition for the development of tubercular germs in her system?"

The witness answered, "I should consider that with those facts stated as you have given them to me, that the condition would be very favorable to the development of consumption." The examination continued as follows: "Q. Why? A. For the simple reason that the woman's resistance must necessarily have been lowered by the sickness which she went through. — Q. Now assume that that sickness had been eliminated and that she had continued a well, strong woman, I want to know whether under those conditions you would have expected the tubercular germs would have developed into the tuberculosis which you found? A. I can think of absolutely no reason why tuberculosis should develop under those circumstances."

At the close of the evidence the defendant asked the judge to rule that the plaintiff was not in the exercise of due care and that there was no evidence of negligence on the part of the defendant, and also asked for many other rulings, including a ruling that the tuberculosis from which the plaintiff suffered was due to a new and independent cause for which the defendant was not responsible and for which there could be no recovery in this action. The judge refused to make these rulings. He submitted to the jury certain special questions, which with the answers to them were as follows:

"1. Was the door in which Mrs. Larson's hand was caught opened while the car was in motion?" The jury answered "Yes."

"2. Is Mrs. Larson's tuberculous affection directly attributable to the injury she received by having her hand caught in the car door?" The jury answered "Yes."

"3. As compensation for all damage sustained by Mrs. Larson, — aside from that due to her tuberculous affection, — the jury award the sum of $500."

"4. As compensation for all damage sustained by Mrs. Larson the jury award the sum of $3,000."

The jury returned a general verdict for the plaintiff in the sum of $3,000; and the defendant alleged exceptions.

*C. Brewer,* for the defendant.

*D. E. Hall,* (*F. J. V. Dakin* with him,) for the plaintiffs.

SHELDON, J. The jury had a right to find that the female plaintiff was in the exercise of due care and had not assumed the risk of the accident which happened. The fact that she had left her

seat and walked to the door of the car as it approached the station was not decisive against her. *Barden* v. *Boston, Clinton & Fitchburg Railroad,* 121 Mass. 426. *Worthen* v. *Grand Trunk Railway,* 125 Mass. 99. Her putting her hand upon the door was an involuntary act done to steady herself when the lurch of the car threw her against the door. This presented a question for the jury.

There was also evidence of negligence on the part of the defendant. It is not claimed that the lurch of the car, however violent and unexpected, constituted such negligence; but the jury might find that it should have operated as a warning to the defendant's servant in charge of the door that passengers who had come or were coming to it for the purpose of leaving the car might be thrown against it and involuntarily might seize any support within their reach. If the person so in charge was the brakeman at the rear of the car, as reasonably might have been inferred, the argument in favor of the plaintiff was strengthened. *McGlinchy* v. *Boston Elevated Railway,* 206 Mass. 7. The reasoning in that case is closely applicable to the case at bar.

The admission in evidence of the defendant's rules 91 and 99 was excepted to. That part of rule 91 which states that "passengers should be induced to leave car by the side doors" was plainly competent. It tended to show the necessity of care in opening the door in question, by which passengers were expected to go out. Nor was the rest of the rule clearly inapplicable to the case presented, especially as the exceptions do not show at what stage of the trial the rules were offered and admitted. *Crowley* v. *Boston Elevated Railway,* 204 Mass. 241, 246. Only the second paragraph of rule 99 was admitted. This was not incompetent for similar reasons. Both of these rules on their face applied to all the doors of the car.

The testimony as to oral instructions or directions given by the defendant to its servants as to the operation of the doors was admitted without exception, and it is not necessary to consider the question which was left undecided in *Crowley* v. *Boston Elevated Railway, ubi supra.* It was perhaps intimated in *Lindenbaum* v. *New York, New Haven, & Hartford Railroad,* 197 Mass. 314, 324, that published rules might be modified by oral instructions; but the question whether the doctrine of *Stevens* v. *Boston Elevated Railway,*

184 Mass. 476, firmly settled as it now is in our decisions, should be extended to cover all oral instructions given by a superior officer or an instructor to an inferior servant, has not been passed upon by the court, and is not now presented.

We cannot say that Pasho's testimony on cross-examination and on his re-direct examination had as matter of law the effect of annulling his testimony as to the oral instructions about which he testified. It was for the jury to settle the fact. *Cameron* v. *New England Telephone & Telegraph Co.* 182 Mass. 310. *Tupper* v. *Boston Elevated Railway,* 204 Mass. 251. The jury could believe his earlier rather than his later statements. He was not allowed to say what doors or what cases the rules in evidence were intended to cover. This was right. The rules were not ambiguous, and spoke for themselves. Any oral modifications or explanations of the rules given to the operators were not excluded.

It was not wrong to admit the hypothetical question put to Dr. Hawes. The question could properly include what material facts the counsel deemed to be proved or expected to be proved, and need not include others. It would be for the jury to say what facts were proved. *Hunt* v. *Lowell Gas Light Co.* 8 Allen, 169. *McCarthy* v. *Boston Duck Co.* 165 Mass. 165, 166. *Burnside* v. *Everett,* 186 Mass. 4, 6.

If the plaintiff's tuberculosis had been directly caused by this accident, it would of course have been an element of damages. So, if it were induced without any other intervening cause by her weakened condition or her loss of blood, itself directly caused by the accident, the same would be true. And if at the time of her injuries there were germs of tuberculosis in her system, and if the direct consequence of her injuries was to lessen her general health and cause weakness and reduce her power of resistance to the toxic effect of these germs, and if solely by reason thereof the tuberculosis which had been merely latent in her system became developed into an existing disease, as on the evidence the jury were warranted in finding, they would then have a right to find that the tuberculosis was a direct and immediate result of her injuries and to assess damages therefor. *Coleman* v. *New York & New Haven Railroad,* 106 Mass. 160, 178. *Derry* v. *Flitner,* 118 Mass. 131, 133. *McGarrahan* v. *New York, New Haven, & Hartford Railroad,* 171 Mass. 211. *Rooney* v. *New York, New Haven, & Hartford Railroad,*

173 Mass. 222. *Sullivan* v. *Boston Elevated Railway*, 185 Mass. 602. *Weber* v. *Third Avenue Railroad,* 12 App. Div. (N. Y.) 512. *Dickson* v. *Hollister,* 123 Penn. St. 421. *Baltimore City Passenger Railway* v. *Kemp,* 61 Md. 74. *Beauchamp* v. *Saginaw Mining Co.* 50 Mich. 163. *Louisville & Nashville Railroad* v. *Jones,* 83 Ala. 376. *Louisville, New Albany & Chicago Railway* v. *Falvey,* 104 Ind. 409, 426. *Seckinger* v. *Philibert & Johanning Manuf. Co.* 129 Mo. 590. *Neff* v. *Cameron,* 213 Mo. 350, 365. *Ross* v. *Great Northern Railway,* 101 Minn. 122. *People's Railway* v. *Baldwin,* 7 Pennewill (Del.) 383. *Crane Elevator Co.* v. *Lippert,* 63 Fed. Rep. 942. If, however, her tuberculosis came from germs introduced into her system after she had sustained these injuries, or by the operation of some other subsequent and independent cause, then, even though the disease would not have developed and manifested itself but for her physical condition having been weakened and her power of resistance diminished by those injuries, it well may be that she could recover no damages for that sickness and its consequences. *Raymond* v. *Haverhill,* 168 Mass. 382. *Snow* v. *New York, New Haven, & Hartford Railroad,* 185 Mass. 321. *Scheffer* v. *Railroad,* 105 U. S. 249. But no such claim as that last suggested was made here. The defendant's contention was and is that the evidence as to tuberculosis was wrongly admitted and that no damages should be allowed by reason thereof; and that contention cannot be sustained. The judge clearly and plainly instructed the jury to allow no such damages unless they were satisfied that the tuberculosis was the direct and immediate result of the plaintiff's original injuries. As to this, the defendant's only exception was to the refusal of the instructions for which it asked. These requests, so far as not given, were properly refused.

The other exceptions either have been waived or require no discussion.

*Exceptions overruled.*