EVANGELISTA MORALES ET AL., Plaintiffs and Appellees, *v.* MANUEL MARTÍNEZ, Defendant and Appellant.

No. 4286.  Argued May 4, 1928.—Decided May 3, 1929.

*F. B. Forxu, is*, *F. Zapater* and *Salvador Suau* for the appellant. *M. Olmedo* for the appellees.

Mr. Justice Wolf delivered the opinion of the court.

This was a case where the court below rendered judgment for the plaintiffs and delivered an opinion on which we have largely relied. The appellant made a slight complaint as to this finding of negligence causing injuries to the father of the plaintiffs, but as the matter involved a conflict of the evidence, he did not seriously question the said finding of the court. What the appellant does assail is the conclusion that the death of Antonio Morales, father of the plaintiffs, was due to the said negligent act of the defendant.

The appellant first draws attention to the fact that there were three complaints filed. The first of these was the one filed in a municipal court by Antonio Morales in his lifetime. He alleged relatively slight injuries, said he was in bed three days and solely could return to his daily work two weeks after the accident. After the death of Morales the original complaint described the injuries as follows:

"That as a result of the impact caused by the automobile of the defendant, as above stated, the said Antonio Morales, father of the plaintiffs, suffered the following injuries; a heavy blow on the left of the thorax, a blow on the back, a contusion on the left knee and leg, accompanied by a scratch; and that Morales died on July 13, 1923, in consequence of these injuries."

The amended complaint described these injuries in this form:

"A heavy blow on the left side of the thorax, blows in the kidneys and loins, a contusion of the left knee and leg, accompanied by a scratch; and that Morales died July 13, 1923, in consequence of these injuries."

The appellant, after drawing attention to the inconsistent averment, then cites jurisprudence to the effect that admissions in pleadings, if sworn to, may afford evidence against the party, not easily rebutted. There may be some distinc-

tion by reason of the fact that the present action is not by Morales and the cause of death may be different.

On the 13th of July, 1923, Antonio Morales died and Dr. Browne, the attendant physician, testified that the death was due to paralysis of the bladder. The appellant maintains that the causal relation between the death and injuries received, especially the injuries described by the decedent himself, was not shown. He further insists that the amended complaint was only filed after the plaintiffs discovered that it was impossible to deduce the death from the description previously made. In our consideration of the case we have not given a great deal of attention to these alleged inconsistencies, because in the final analysis, no matter what were the previous averments, the plaintiffs were bound to show to the court that the death resulted from the accident. In other words, if, as carefully found by the court below, the death did result from the accident, the description of the apparent injuries received was not of great importance. We say this in part because if a man dies from an internal injury the outward signs may or may not show the total effect produced or what final direction the impact took. Appellees indicate the possibility that when witnesses of the defendant examined the deceased some of the outward signs may have disappeared.

According to the testimony of Dr. Browne, the paralysis of the bladder resulted from a violent act.

In these regards the court below said:

"Thus, it may be found that Morales was taken home suffering greatly. As regards the history of this case, after that night, Mrs. Morales tells us that she took her husband to the Presbyterian Hospital and that there they gave him some medicine; that he could not sit or stand up and that he complained greatly; that as he felt no relief from the medicine given him at the Presbyterian Hospital, she called Dr. Browne, who informed her that the condition of the patient was very serious. She also said that Morales could not urinate, that he felt a great deal of pain; that after that date he was unable to work and that he never got up again.

"This testimony is contradicted by the admissions of Morales himself in the complaint which he filed before the Municipal Court of San Juan, claiming the sum of $450 as damages for the injuries he had suffered, the pertinent part of which has already been copied in this opinion. In that complaint it is alleged that he suffered a heavy blow on the left side of the thorax which still pained him and a contusion of the left knee and leg, accompanied by a scratch; that these injuries compelled him to remain in bed for three days, being unable to return to his daily work until two weeks after the accident.

"I understand that from the wording of the complaint it does not appear that the person injured was absolutely well. On the contrary, it appears therein that he was still suffering from the injuries received. Furthermore, it should be noticed that although it is alleged therein that it was two weeks before he returned to his daily work, it is also true that exactly thirteen days after the complaint was served on the opposite party Dr. Browne visited the sick man for the first time, that is, on June 26th, and the doctor testifies that when he made his first visit Morales was in a serious condition; and further that his condition was fatal.

"If any contradiction appears in the complaint filed in the Municipal Court of San Juan by Morales' attorney, it is my opinion that the same facts contradict it in such a manner that they lead us to the conclusion that the truth is that, in spite of such averments, this man was in a serious condition a few days after the complaint was filed.

"But if the history of the case were not sufficiently plain we have besides Dr. Browne's testimony. His qualifications to testify and reputation as a physician were uncontroverted; moreover, it appears from the record that the defendant admitted his qualifications as a medical expert.

"This physician, who attended Morales, who examined him and studied the case, testified plainly and emphatically that in his opinion Morales died as a result of the injuries received in an accident, the violent blows received on the back; and upon answering questions asked by the defendant he states that the kidneys, the bladder, the rectum and the lungs were injured as a consequence of the accident, and not by reason of typhoid fever, tuberculosis, malaria or syphilis."

The court reviewed at length various cases, namely, *Biddle* v. *Jacobs,* 172 S. W. 258; *MacDonald* v. *Metropolitan Street Railway Co.,* 118 S. W. 78; *Sharp* v. *Missouri Pacific Railway Co.,* 111 S. W. 1154; *Louisville & N. R. Co.* v. *Simrall's Adm'r,*

104 S. W. 1011; *Fetter* v. *Fidelity & Casualty Co.*, 73 S. W. 592. In *Biddle* v. *Jacobs, supra,* after saying that there must be a preponderance of the evidence in favor of a plaintiff the court said:

"Such proof is not required, however, to exclude all doubt on the subject, nor is it required that the proof show the death could not, or that the death did not, in fact, result from a tumor, or some other cause not attributable to the collision; but it is sufficient if the evidence reasonably warrants the jury in finding from a preponderance of the evidence that deceased's death did, in fact, result from an injury received in this collision."

And again, from *Sharp* v. *Missouri Pacific Railway Co., supra:*

"The expert medical testimony was merely advisory, and, because the advice given to the jury by the opinions of the doctors differed, that presents no case for our interference. The mysteries of death are inscrutable and baffle complete scientific solution by mortal man. The sting of death is hidden. The best that can be done is to establish a chain of causation—to show a cause (an injury) from which an effect (death) might reasonably follow. We know, without doctor's advice, that men have been killed by falls. We know, too, that death may follow weeks of pain and suffering from inward hurts, having their origin in such a fall. This seems to be such a case, provided, of course, the jury believed the plaintiffs' testimony."

The court below also said:

"Whether the injured man did or did not continue his work establishes no presumptions for or against him. The courts, in considering cases of this character, must consider the circumstances surrounding the same."

Briefly, Dr. Browne, who was called in to attend Morales shortly before his death, filed a death certificate wherein he stated that death ensued from paralysis of the bladder. On the witness stand he insisted over and over again that the condition in which he found Morales could only have been produced by an outward accident and not by a slow disease. There was evidence tending to show, and the court believed

it, that until the time of the accident Morales was a well man. The testimony of Rosario Martínez, mother of the plaintiffs, in this regard was uncontradicted, as stated in part of the opinion of the court which we have copied.

This seems an opportune moment to say that Dr. Browne may have been mistaken in his diagnosis and in his expert testimony, but if what he said was true the plaintiffs are entitled to recover. While there was some contradiction of the plaintiffs' evidence, the court carefully analyzed it and either did not believe it or found it improbable.

The principal attack on the evidence is as to the truth of Dr. Browne's expert testimony. At the outset the defendant admitted his capacity as such expert and the plaintiffs were relieved of proving the qualifications, experience or knowledge of the physician who attended their father. So that Dr. Browne is in the case with his testimony entitled to as much weight as any other expert in the world. Dr. Meléndez, who testified that he had originally examined Morales, contradicted Dr. Browne as to the fact and also gave expert testimony tending to show that the condition in which Morales was found to be could not have been produced by a violent act, and should have been produced by syphilis, typhoid fever, malaria or poisoning. The court gave credit to Dr. Browne and not to Dr. Meléndez. The chief argument now is the statements of the text writer.

Dr. Browne, as we have mentioned, insisted strongly on the stand that the state of the bladder which he found in his patient could only have resulted from a violent blow or blows. The statement of the text writer Keen, according to the defendant, would tend to exclude the possibility of the injury to the bladder occurring as claimed by the plaintiffs. Nevertheless Keen contains this statement:

"INJURIES OF THE BLADDER.—Because of its situation deep in the well-padded bony pelvis, injuries to the bladder are rare compared with those of the more exposed organs of the body; and it requires an extreme degree of violence to reach or affect it. Nevertheless, a

force that is powerful enough to injure the bony pelvis does not usually fail to leave its impress on the bladder—as a contusion, a wound, or a rupture.'' (Keen's Surgery, p. 327.)

Thus the possibility of the injury to the bladder from the accident is not excluded. The direct and circumstantial evidence tend to support the averments of the complaint. The court would have been justified in finding for the plaintiffs despite the text writer.

We do not discover, however, that the statements of the text writer Keen were submitted to the court. Now, while courts take judicial notice of the facts of science and may consult the texts, a particular, alleged fact of science should be drawn to the attention of the trial court. Whether it is a fact or not may depend upon the opinion of experts and there may be countervailing opinions. The court and the opposite party have a right to consult or present other texts or other expert testimony.

Dr. Browne as an expert was entitled to due weight. He might perhaps have contradicted the opinion of the text writer. It is very well known that medical deductions change or advance with the experience of the profession. This he might have shown if confronted with the text of Keen; supposing, as is not the fact, that the text was entirely adverse.

Even though Morales was in poor health, if the accident hastened his death the plaintiffs were entitled to recover. Said the court by Chief Justice Rugg in *Kelleher* v. *Newburyport,* 227 Mass. 462, 465:

"There was categorical testimony from the attending physician to the effect that the injury received by the plaintiff was a sufficient cause for his death. This, in connection with evidence as to his steadily deteriorating physical condition after the injury, was sufficient to warrant a finding that the death resulted from the injury. The pre-existing heart disease may have been found to have been a condition and not a cause. *Larson* v. *Boston Elevated Railway,* 212 Mass. 262. *Wiemert* v. *Boston Elevated Railway,* 216 Mass. 598. *Madden's Case,* 222 Mass. 487, 493. If the testimony of the physician was in some respects contradictory, its weight was for the jury."

504

The appellant insists upon a considerable number of possible or probable mistakes in the testimony of the witnesses or the conclusions of the court. We have not considered it necessary to analyze them. Even if we doubted, with the appellant, the possibility of a paralysis of the bladder producing death, we still would be inclined to think that the general finding of the court should not be reviewed. The statement of Dr. Browne that the decedent suffered from a paralysis of the bladder we can not doubt, even if it was only a symptom, as appellant maintains. The court had a right to believe that the condition of the bladder came from a violent blow. Hence, even if the death was mysterious the court had a right to infer that it proceeded from the accident. However, as we said, we feel bound to accept the conclusions of the expert, believed by the court.

An award of $4,000 in this case we do not find excessive. Finding no error, the judgment should be affirmed.