EVANGELISTA, VICENTA, ANTONIO, MARÍA, BENITO Y LINO MORALES, los cinco últimos por conducto de su madre ROSA MARTÍNEZ, demandantes y apelados, *v.* MANUEL MARTÍNEZ, demandado y apelante.

No. 4286.—*Sometido:* Mayo 4, 1928. *Resuelto:* Mayo 3, 1929.

*F. B. Fornaris, F. Zapater* y *Salvador Suau,* abogados del apelante; *M. Olmedo,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Éste es un caso en que la corte inferior dictó sentencia a favor de los demandantes y emitió una opinión en la que hemos descansado grandemente. El apelante se queja ligeramente de la conclusión respecto a la negligencia que produjo lesiones al padre de los demandantes, pero como la cuestión envolvía un conflicto de prueba, no atacó seriamente dicha conclusión de la corte. Lo que el apelante ataca es la conclusión de que la muerte de Antonio Morales, padre de los demandantes, se debió al supradicho acto negligente del demandado.

 El apelante llama primeramente la atención hacia el hecho de que se radicaron tres demandas. La primera de éstas fué radicada en una corte municipal por Antonio Morales mientras vivía. Se alegaban lesiones relativamente ligeras y además que el demandante había tenido que permanecer en cama durante tres días y que sólo pudo regresar a su trabajo cotidiano dos semanas después de ocurrir el accidente. Después del fallecimiento de Morales, la demanda original radicada describía las lesiones en la siguiente forma:

"Que como resultado del choque causado por el automóvil del demandado, como queda dicho, el referido Antonio Morales, padre de los demandantes, recibió las siguientes lesiones: un fuerte golpe en el lado izquierdo de la región torácica, un golpe en la espalda, una contusión en la rodilla y pierna izquierda, acompañada de una raspadura; siendo estas lesiones la causa de que le sobreviniera la muerte el día 13 de julio de 1923."

En la demanda enmendada se expusieron así:

"Un fuerte golpe en el lado izquierdo de la región torácica, golpes en la región renal y región lumbar, una contusión en la rodilla y pierna izquierdas, acompañada de una respadura, siendo estas lesiones la causa de que le sobreviniera la muerte el día 13 de julio, 1923."

El apelante, después de llamar la atención hacia estas alegaciones inconsistentes, cita jurisprudencia al efecto de que las admisiones hechas en alegaciones juradas pueden servir como prueba contra la parte que las hace, prueba que no puede controvertirse fácilmente. Puede haber alguna distinción por el hecho de que la presente acción no ha sido instituida por Morales, y la causa de la muerte puede ser distinta.

Antonio Morales falleció el 13 de julio de 1923 y el Dr. Browne, que fué el médico que le asistió, declaró que la muerte sobrevino a consecuencia de parálisis en la vejiga. El apelante sostiene que no se probó la relación causal entre la muerte y las lesiones recibidas, especialmente las lesiones descritas por el interfecto mismo. Insiste además en que la demanda enmendada sólo fué radicada cuando los demandantes descubrieron que era imposible deducir la muerte de la descripción hecha anteriormente. En la consideración que hemos hecho del caso no hemos prestado gran atención a estas supuestas inconsistencias, toda vez que en el análisis final, no importa cuáles fueran las alegaciones anteriores, los demandantes estaban obligados a demostrar a la corte que la muerte fué producida por el accidente. En otras palabras, si según halló cuidadosamente la corte infe-

rior, la muerte sobrevino a consecuencia del accidente, la descripción de las lesiones aparentes recibidas no era de gran importancia. Decimos esto, en parte porque si un hombre muere de una lesión interna, los signos externos pueden o no demostrar el efecto total producido o la dirección final que el impacto tomó. Los apelados indican la posibilidad de que cuando los testigos del demandado examinaron al interfecto, algunas de las señales externas pudieran haber desaparecido.

██ Según la declaración del Dr. Browne, la parálisis de la vejiga fué causada por un acto violento. A este respecto la corte inferior dijo:

"Así es que puede darse por probado que Morales fué llevado a su casa en un estado doloroso. En cuanto a la historia de este caso, después de esa noche, nos dice la Sra. Martínez que llevó a su esposo al Hospital Presbiteriano, y le dieron unas medicinas, que él no podía estar ni sentado ni parado quejándose muchísimo; que como no obtuvo alivio con las medicinas que le dieron en el Hospital Presbiteriano, llamó al Dr. Browne, informándole éste que el estado era sumamente grave. Declaró que Morales no podía orinar, que tenía mucho dolor, que no trabajó más después de esa fecha, y que no se levantó más.

"Esta declaración está contradicha por las propias admisiones hechas por el lesionado en la demanda que entabló ante la Corte Municipal de San Juan, solicitando por el accidente sufrido la cantidad de cuatrocientos cincuenta dólares ($450.00) por daños y perjuicios; y la parte pertinente de la cual aparece ya copiada anteriormente en esta opinión. Se dice en esa demanda que recibió un fuerte golpe en el lado izquierdo de la región torácica, que todavía le produce dolor, y una contusión en la rodilla y pierna izquierdas, acompañada de un rasponazo, y que estas lesiones le tuvieron en cama cosa de tres días, sin poder volver a sus ocupaciones cotidianas hasta las dos semanas del incidente.

"Entiendo que del texto de esta demanda no aparece que se diga que el lesionado estaba completamente bien. Es más, de la misma aparece que todavía sufría dolor a consecuencia de los golpes recibidos. Además, nos encontramos con que a pesar de que en ella se dice que tardó dos semanas en volver a sus ocupaciones habituales, es no menos cierto que exactamente trece días después de notificada

la demanda a la parte contraria, hacía el Dr. Browne su primera visita al enfermo, o sea, el 26 de junio; y éste nos declara que al hacer aquella primera visita, el estado de Morales era grave; es más, nos dice que su estado era fatal.

"Si aparece alguna contradicción en cuanto a la demanda presentada ante la Corte Municipal de San Juan por el abogado de Morales, entiendo que los propios hechos la contradicen de una manera tal que nos lleva a la conclusión de que lo cierto es que a pesar de esas alegaciones, el estado de este individuo era grave unos días después de haberse radicado esa demanda.

"Pero si la historia del caso no fuera lo suficientemente clara, tenemos además la declaración del doctor Browne. La capacidad del Dr. Browne como médico no fué impugnada, ni su reputación tampoco; es más, aparece del récord que la parte demandada admitió la capacidad de éste como tal perito médico.

"Este médico, que atendió a este individuo, que lo examinó y estudió su caso, nos declara clara y enfáticamente que él atribuye la muerte de Morales a las lesiones que recibiera en un accidente, a golpes violentos recibidos en la espalda; y al contestar preguntas de la parte demandada manifiesta que los riñones y la vejiga y el recto y los pulmones fueron lesionados como consecuencias del accidente, y no a causa de ningún proceso de tifoidea, tuberculosis, malaria o sífilis."

La corte revisó extensamente varios casos, a saber: *Biddle v. Jacobs*, (Arkansas) 172 S. W. 253; *MacDonald v. Metropolitan Street Railway Co.*, (Missouri) 118 S. W. 78; *Sharp v. Missouri Pacific Railway Co.*, (Missouri) 111 S. W. 1154; *Louisville & N. R. Co. v. Simrall's Adm'r*, (Kentucky) 104 S. W. 1011; *Fetter v. Fidelity & Casualty Co.*, (Missouri) 73 S. W. 592.

En el caso de *Biddle* v. *Jacobs, supra,* después de decirse que debe haber una preponderancia de la prueba a favor de la parte demandante, la corte manifestó:

"Sin embargo, no se exige una prueba tal que excluya toda duda sobre la materia, ni tampoco se requiere que la prueba demuestre que la muerte no sobrevino ni pudo sobrevenir en realidad de un tumor o por alguna otra causa que no se le pueda atribuir al choque; pero es suficiente que la prueba justifique razonablemente que el jurado halle por la preponderancia de la evidencia que la muerte del in-

terfecto en realidad fué producida por una lesión recibida durante el choque.''

Y en el de *Sharp* v. *Missouri Pacific Railway Co., supra,* se dijo:

''La declaración pericial médica era meramente directiva, y como los consejos dados al jurado por los facultativos diferían, no se presenta un caso en que debamos intervenir. Los misterios de la muerte son inescrutables, y se burlan de la solución científica que hagan los mortales. El aguijón de la parca está oculto. Lo más que puede hacerse es establecer una cadena causal—demostrar la causa (una lesión) que razonablemente puede producir el efecto (la muerte). Sabemos, sin que los facultativos lo digan, que ha habido hombres que han muerto debido a caídas. Sabemos también que la muerte puede sobrevenir después de semanas de dolor y sufrimientos causados por lesiones internas que se originan en tal caída. Este parece ser un caso de tal naturaleza, siempre que, desde luego, el jurado haya creído la declaración de los demandantes.''

La corte inferior también dijo:

''El hecho de que el lesionado haya continuado o no sus labores no es uno que establece presunciones ni a su favor ni en su contra. Las cortes al estudiar casos de esta naturaleza, deben estudiar todas las circunstancias de los mismos.''

Diremos brevemente que el Dr. Browne, quien fué llamado para que asistiera a Morales poco antes de su muerte, emitió una certificación de defunción en la cual hizo constar que la muerte fué causada por parálisis de la vejiga. En la silla testifical insistió repetidas veces en que el estado en que halló a Morales sólo pudo haber sido producido por un accidente externo, y no por una enfermedad paulatina. Hubo prueba tendente a demostrar, y la corte la creyó, que hasta el momento del accidente Morales era un hombre sano. La declaración de Rosario Martínez, madre de los demandantes, no fué contradicha a este respecto, según se dice en la parte de la opinión de la corte inferior que hemos copiado.

Parece éste el momento oportuno para decir que el Dr.

Browne pudo haber estado equivocado en su diagnóstico y en su declaración pericial, pero de ser cierto lo que él dijo, los demandantes tienen derecho a percibir indemnización. Si bien hubo alguna prueba para contradecir la de los demandantes, la corte la analizó cuidadosamente y no la creyó, o llegó a la conclusión de que era improbable. El principal ataque que se hace a la prueba de los demandantes se refiere a la veracidad de la declaración pericial del Dr. Browne. Al principio, el demandado admitió su capacidad como tal perito, y los demandantes fueron relevados de probar la preparación, experiencia o conocimientos del médico que asistió al padre de ellos. De suerte que la declaración del Dr. Browne en el presente caso tiene tanto peso como la de cualquier otro perito en el mundo.

El Dr. Meléndez, quien declaró haber examinado originalmente a Morales, contradijo al Dr. Browne en relación con los hechos y prestó declaración pericial tendente a demostrar que el estado en que encontró a Morales no pudo ser producido por un acto de violencia y que debió haber sido causado por sífilis, fiebre tifoidea, malaria o envenenamiento. La corte dió crédito a la declaración del Dr. Browne y no a la del Dr. Meléndez. El principal argumento ahora es lo dicho por un tratadista.

Según hemos manifestado, mientras ocupaba la silla testifical el Dr. Browne insistió fuertemente en que él halló que el estado de la vejiga del paciente sólo pudo sobrevenir a causa de uno o más golpes violentos. De acuerdo con el demandado, la manifestación del tratadista Keen tendería a excluir la posibilidad de una lesión en la vejiga ocurrida en la forma alegada por los demandantes. Sin embargo, Keen hace la siguiente manifestación:

"Lesiones de la vejiga: Debido a su situación en la bien protegida pelvis ósea, las lesiones de la vejiga son raras veces comparadas con las de otros órganos del cuerpo que están más expuestos; y se requiere un sumo grado de violencia para llegar a ella o para afectarla. No obstante, una fuerza que sea lo suficientemente poderosa

para lesionar la pelvis ósea, por lo general no falta en dejar tras sí rastros en la vejiga, como por ejemplo, una contusión, una lesión o una dislocación.'' (Keen's Surgery, p. 327).

Y dice algo más a ese efecto o a uno similar.

De modo que la posibilidad de la lesión de la vejiga debido a un accidente, no ha sido excluida. La prueba directa y circunstancial tiende a sostener las alegaciones de la demanda. La corte pudo haber estado justificada al dictar su fallo a favor de los demandantes, a pesar de la opinión del tratadista.

Empero, no hallamos que las manifestaciones del tratadista Keen fueran sometidas a la corte. Si bien los tribunales toman conocimiento judicial de los hechos de la ciencia y pueden consultar los textos, debe llamarse la atención de la corte hacia un hecho científico en particular alegado. Si ello es un hecho o no, puede depender de la opinión de los peritos, y puede que haya criterios opuestos. La corte y la otra parte tienen el derecho de consultar o presentar otros textos o de aducir otra prueba pericial.

El Dr. Browne tenía derecho a merecer el debido crédito como perito. Quizá él pudo haber controvertido la opinión del tratadista. Es muy conocido el hecho de que las deducciones médicas cambian o se adelantan con la experiencia de la profesión. Así, pues, él pudo haber demostrado, si se le hubiera confrontado con el texto de Keen, suponiendo que sea un hecho lo que no lo es, que el texto hubiera sido completamente adverso.

Aun si la salud de Morales hubiera sido pobre, si el accidente precipitó su fallecimiento, los demandantes tenían derecho a recobrar indemnización. Dijo la corte por voz de su Juez Presidente Sr. Rugg en el caso de *Kelleher* v. *Newburyport*, 227 Mass. 462–465:

"Hubo declaraciones categóricas de parte del médico que lo asistió al efecto de que la lesión recibida por el demandante fué la causa suficiente de su muerte. Esto, en unión a la prueba respecto a su condición física que se iba deteriorando paulatinamente después del

accidente, era suficiente para justificar la conclusión de que la muerte sobrevino como resultado de la lesión. La enfermedad cardíaca de que padecía desde antes del accidente, puede que haya 'sido una condición y no una causa. Larson v. Boston Elevated Railway, 212 Mass. 262; Wiemart v. Boston Elevated Railway, 216 Mass. 598; Madden's Case, 222 Mass. 487, 493. Si la declaración del médico fué contradictoria en algunos extremos, al jurado incumbía apreciarla.''

El apelante insiste en un número considerable de errores posibles o probables en las declaraciones de los testigos o en las conclusiones de la corte. No hemos creído necesario analizarlos. Aun si dudáramos, como lo hace el apelante, la posibilidad de que una parálisis de la vejiga produzca la muerte, sin embargo, estaríamos inclinados a creer que la conclusión general a que llegó la corte no debe ser revocada. No podemos dudar la aseveración hecha por el Dr. Browne de que el interfecto padecía de una parálisis en la vejiga, aun si ella sólo fuera un síntoma, según sostiene el apelante. La corte tenía derecho a creer que el estado de la vejiga sobrevino a causa de un golpe violento. Por consiguiente, aun si la muerte fué misteriosa, la corte tenía derecho a inferir que fué causada por el accidente. No obstante, según hemos dicho, nos sentimos obligados a aceptar las conclusiones del perito, que fueron creídas por la corte.

No vemos que la concesión de $4,000 en este caso sea excesiva.

*No hallando que se haya cometido error, debe confirmarse la sentencia apelada.*