## Caplan *v.* Bensalem Township Zoning Board of Adjustment, Appellant.

Argued April 25, 1958. Before JONES, C. J., BELL, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Chester Thomas Cyzio,* with him *John H. Wood, Jr.,* and *William Vincent Mullin,* for appellants.

*William J. Carlin,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 26, 1958:

In June, 1956, Irving H. Caplan purchased from the Cornwells Fire Co. No. 1, in Bensalem Township, Bucks County, the building which the firemen had occupied as a fire house. Trading under the name of Bol-D-Kap Tire Company, Caplan moved into the building with tools, equipment and machinery and entered upon the business of retreading and recapping automobile tires. The zoning officer of the township, after

application made by Caplan for a permit to conduct such a business, refused the application, asserting that Caplan's business contravened against section 601 of the local zoning ordinance. Caplan appealed to the township board of adjustment which, after a full hearing, dismissed the appeal and affirmed refusal of the permit. He then petitioned the Court of Common Pleas of Bucks County for a writ of certiorari. The court issued the writ and brought up the entire record of the proceedings before the board. On that record the court reversed the decision of the board; and the board appealed to this Court.

Since the plaintiff's business place is located in a district which has been zoned commercial, Caplan contends that the service he renders falls logically and legally within section 601 of article VI of the zoning ordinance which provides that in "C-General Commercial District" "A building may be erected or used, and a lot may be used or occupied, for any of the following purposes and no other: . . . 6. Public garage, service station, automobile sales agency, parking garage or lot, provided all facilities are located and all services are conducted on the lot. . . . 12. Any use of the same general character as any of the above permitted uses provided that no use which is noxious or hazardous shall be permitted except in accordance with Section 1108."

Is the recapping and retreading of tires an operation normally associated with a public garage or service station? The lower court found that it is. However, the very explanation offered by the court in reversing the board is proof to the contrary. Said the court: "After the used tire is inspected to determine its suitability for refinishing, it is mounted on a buffing stand or wheel and abraded by braked contact with another spiked wheel to remove some of the remnants of the

old tread and also to provide a roughened surface for the adhesive cement which is next applied. Prefashioned strips of synthetic rubber, manufactured elsewhere, are then placed around the tire to form the material for the new tread. The tire is next placed in a molding machine where it remains for one hour under conditions of high pressure and temperature by which the built-up material is fashioned, cured and made to adhere to the body of the old tire. Thereafter, it remains only to trim off the excess rubber and to paint the sidewalls to provide a finished appearance.

"Appellant presently has six of the molding machines and processes thirty to forty tires per day, operating with six employees of whom two are constantly on the road in his trucks collecting and delivering tires to customers. About five percent of his business consists of dealing in tires which appellant himself buys, processes and then resells. The other ninety-five percent is comprised of service on tires belonging to others, forwarded about equally from service stations and from used car dealers.

If the lower court saw in all this ponderous, heavy movement the usual activity to be found in a public garage or service station, it built an automobile rendevous such as scarcely meets the eye of the average motor traveller. A reading of the record reveals that the Caplan establishment, when in full operation, made noises like a sawmill, gave off unpleasant odors described by one witness "like the by-product of vulcanization," and spread "black powdery stuff" on the adjoining highway. It would be a rare public garage where one encountered, as here, molding machines weighing 1,000 pounds which heat rubber to temperatures varying from 290 to 300 degrees Fahrenheit. It would be a peculiar motorist retreat which produces the noises, smells, and "buzzing" atmosphere which one

found in the former fire house which has become the home of the Bol-D-Kap Tire Company in Bensalem Township.

The lower court seems to have based its decision principally on the proposition that no evidence was introduced to refute statements made by Caplan and other witnesses that there did in fact exist some automobile stations which performed tire recapping and retreading. It is to be noted here, however, that the zoning board of adjustment heard the plaintiff's evidence and was not impressed, and the court took no additional testimony. When Caplan was asked: "Are some of these recapping shops which you have visited operated in conjunction with a public garage or service station?" he answered: "Yes." But he offered no particulars to substantiate his assertion.

When F. F. Smith, terminal manager of B. F. Goodrich Co., testified "Most of small recappers are not in industrial sections; have recapping plant right in garages." he made a general statement which was unsupported by objective illustration and the board was justified in not giving it probative value.

Philip George Koons, who identified himself as a service station operator *and* tire dealer, testified: "Q. In conjunction with your service station, do you operate a recapping—tire recapping and call it tire repair? A. Recapping or retreading." But the fact that one service station operator is also engaged as a "tire dealer" and recaps or retreads tires cannot be interpreted to mean that such activity is one normally carried on in all other service stations.

Samuel Morganstern, a distributor of retread rubber and tire repair materials, testified: "A. *In some instances,* they are operated in conjunction with garages—*majority operate exclusively as tire business in conjunction* with recapping; . . . ." (Emphasis sup-

plied). Certainly, testimony that in "some instances" tire recapping and retreading is carried on in "conjunction with garages" does not establish that it is the normal operation of such a garage. Moreover, this witness made clear that "the majority operate exclusively as tire business in conjunction with recapping."

The lower court found in *Novello v. Zoning Board of Adjustment,* 384 Pa. 294, a precedent for its decision. In that case we sustained the granting of a permit for an automobile "car-wash" enterprise in a commercial zone. But there is a vast difference between washing a car and retreading tires. The washing of a car can be compared to a shoe shine. The retreading of tires can be compared to the more complicated process of re-soling and re-heeling shoes. The former can be accomplished with a daub of polish, the swish of a brush, and a bit of elbow grease. The latter requires the employment of leather, nails, and rubber, the use of various machines, and the exercise of appreciable man power. One can get a shoe shine on a street corner. Shoe repairing can take place only in a shoe repairing shop.

The Court of Common Pleas of Bucks County found in the record, factual findings contrary to those reached by the zoning board. This it was not authorized to do unless the board abused its discretion. Our reading of the record does not show that the board went beyond its power in appraising the evidence brought before it. As we said in *Freed v. Power,* 392 Pa. 195, 198: "It was not the function of the court below to substitute its findings for that of the board but, on the contrary, simply to ascertain whether the board's findings and conclusions were supported by adequate evidence and whether the board abused its discretion."

Only one further matter needs to be noted. Bert W. Conn and Florence Conn, two residents of the

neighborhood surrounding the business premises here involved, petitioned to intervene after the court below had rendered its decision. Caplan has filed a motion to quash their appeal. Since the petition of the Conns could in no way affect the rights of the board of adjustment on this appeal, there is no need, in view of our ultimate decision to pass on the motion to quash.

Order reversed, each party to bear own costs.