FEDERICO PACHECO Y OTROS, como miembros de la SUCESIÓN DE NICOLASA DÍAZ MOJICA, demandantes y recurrentes, *v.* GOBIERNO DE LA CAPITAL, ETC., demandados y recurridos.

*Número:* R-63-89     *Resuelto:* 18 de abril de 1966

P. J. *Santiago Lavandero,* abogado de los recurrentes: *Adelaida Vicente de Souffront, James G. Shine, Alberto Picó* y *José R. Lebrón Velázquez,* abogados del Gobierno de la Capital.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Hernández Matos, Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

La sucesión de doña Nicolasa Díaz Mojica interpuso acción contra el Gobierno de la Capital reclamándole los daños y perjuicios sufridos como consecuencia de la muerte de su causante. En la demanda alegaron, en síntesis, que doña Nicolasa Díaz Mojica falleció el día 27 de marzo de 1950 a consecuencia de un "shock" anafiláctico producido por una inyección de acromicina que le fue puesta en dicho día en el dispensario médico de Puerta de Tierra, propiedad de y operado por el Gobierno de la Capital; que la muerte de la señora Díaz Mojica se debió a los actos y omisiones culposas y negligentes del Gobierno de la Capital. Como actos específicos

de negligencia alegaron (1) que no se hicieron las pruebas que indica la ciencia médica antes de ponérsele la inyección de acromicina a la señora Díaz Mojica y (2) que el Gobierno demandado "tampoco mantenía, ni tenía disponible en dicho dispensario las facilidades médicas mínimas que la ciencia y la prudencia exigen tener a mano para aun en el caso de que no obstante haberse hecho las pruebas indispensables anteriores, sobre constatación de sensibilidad a la inyección de que se trata, pudiese sobrevenir un shock que requiriese tratamiento inmediato, como en el presente caso, de equipo de oxígeno, etc., y otros que evitasen la muerte de la paciente así afectada".

Contestada la demanda y celebrado un juicio en los méritos, el tribunal de instancia dictó sentencia declarando sin lugar la demanda, luego de formular las siguientes:

### "Determinaciones de Hecho

"Que el día 25 de marzo de 1958, Nicolasa Díaz Mojica, quién era la esposa del demandante, Federico Pacheco, y madre legítima de los codemandantes, se personó al Hospital Municipal en Santurce, administrado por el Gobierno de la Capital, para obtener tratamiento médico debido a una dolencia en la garganta que fue diagnosticada como sinusitis, laringitis y faringitis, para lo cual le fue recetado por el Dr. Víctor M. Quiñones cuatro (4) inyecciones de acromicina, tratamiento usual en la práctica médica de la localidad.

Que el Dr. Quiñones sometió a la paciente a un interrogatorio en cuanto al uso de antibióticos, como acromicina, y ésta le contestó 'que no había tenido reacciones adversas a las mismas'. Le preguntó que si había tenido urticaria, mareos, etc., contestando a su vez negativamente. Que se presentó al otro día al dispensario médico de Puerta de Tierra, propiedad del Gobierno de la Capital, a ponerse una de las inyecciones de acromicina recetadas por el Dr. Quiñones, llevando consigo las mismas con la receta. En el dispensario no habían inyecciones de acromicina. Que la enfermera le hizo la prueba subcutánea ('skin test'), práctica usual y normal para antibióticos, dando una reacción negativa, por lo cual procedió a ponerle la primera inyección de acromicina asimilándola muy bien.

Que al día siguiente, 27 de marzo, como a las 8 de la mañana, Doña Nicolasa Díaz Mojica volvió al dispensario para ponerse la segunda inyección de acromicina, la que le fue puesta por la misma enfermera. La paciente salió afuera regresando acto seguido sentándose. La enfermera le preguntó si se sentía mala a lo que contestó en la afirmativa. Inmediatamente la enfermera pidió por una ambulancia, pero como tardó llamaron a un taxi y se dirigieron al Hospital Municipal. Al llegar al hospital la señora murió. La causa de la muerte fue un shock anafiláctico, aunque no se conoce ningún caso en que la acromicina lo haya causado.

El shock anafiláctico es producido cuando se introduce al cuerpo una substancia extraña al mismo que siendo originalmente un antibiótico se convierte en un antígeno. En este caso la acromicina en su principio es un antibiótico y al ser introducida se convierte en antígeno El cuerpo al recibir el antígeno desarrolla lo que médicamente es conocido por anticuerpos que combate el antígeno produciendo así el shock anafiláctico.

No puede predecirse una reacción adversa en un paciente en cuanto a los antibióticos tales como acromicina aún cuando fuere sometido por una prueba cutánea y aún cuando el paciente fuese inyectado en varias ocasiones con el antibiótico, puesto que es un principio médico aceptado, la prueba no tiene valor, y es así mismo un principio médico aceptado que aún cuando el paciente recibiere cantidades de tales antibióticos sin reacción adversa, puede llegar un punto dado que desarrolle una alergia al mismo que ocasione la muerte.

La prueba que se hace en estos casos no es determinante. Las probabilidades son que si una inyección no ha dado reacción, las otras tampoco la den. El historial detallado que dió la paciente es más terminante que la prueba subcutánea." (T.A. págs. 45 a 47.)

Como fundamentos de derecho el tribunal sentenciador descansó (1) en la doctrina expuesta en el caso de *Rivera* v. *Dunscombe*, 73 D.P.R. 819, 838 (1952); (2) en que la doctrina de *res ipsa loquitur* no se aplica como regla general a casos de "*malpractice*" con la única excepción de aquellos casos en que los actos de "*malpractice*" ocurren mientras el paciente se encuentra en estado inconsciente y su cuerpo bajo

el control del médico, y (3) que los hechos no establecen actos u omisiones negligentes de la parte demandada.

■ Convenimos con el tribunal sentenciador en que de los hechos probados no surge una inferencia de negligencia del demandado y que en su consecuencia no es de aplicación la doctrina de *res ipsa loquitur*. En *Hermida* v. *Feliciano*, 62 D.P.R. 55 (1943) y en otros casos posteriores hemos dicho que son tres las condiciones que se requieren para que tenga aplicación dicha doctrina: (1) el accidente debe de ordinario no ocurrir a no ser por la negligencia de otra persona; (2) debe causarlo una agencia o instrumentalidad dentro del control exclusivo del demandado; (3) no debe ocurrir debido a acción voluntaria alguna del demandante. Agregamos en *Kirchberger* v. *Gover*, 76 D.P.R. 907 (1954), que no era aplicable la doctrina y no surgía inferencia alguna de negligencia si de los hechos resultaba que había alguna otra causa probable del accidente de la cual podía inferirse que no hubo negligencia y si la prueba era compatible con la probabilidad de ausencia de negligencia. "Como se puede observar, "— dijimos en *Sociedad de Gananciales, etc.* v. *Presbyterian Hospital*, 88 D.P.R. 391 (1963)—"el citado principio contempla el que contra la inferencia de negligencia—probable causa del accidente—debe aparecer otra causa que por ser *probable* pueda inferirse que no hubo negligencia. No sería suficiente prueba la *posibilidad* de ocurrencia de un hecho para que se entienda controvertida la inferencia que por la ocurrencia de ciertos hechos en determinadas circunstancias nos ofrece la doctrina de *res ipsa loquitur*."

■ En el presente caso está ausente el primero de los elementos de la doctrina. De la muerte de una persona a consecuencia de un choque anafiláctico producido por la administración de antibióticos, no puede inferirse que hubo negligencia alguna, cuando los hechos, como en este caso, demuestran (1) que el médico que prescribió el antibiótico conocía por el interrogatorio que hizo a la paciente, que ésta

no era alérgica a los antibióticos, (2) que el antibiótico prescrito era tratamiento adecuado para la enfermedad de la paciente, (3) se hizo a la paciente la prueba subcutánea (*skin test*) con resultados negativos antes de administrársele el antibiótico, (4) la primera inyección del antibiótico administrado no dio reacción a la paciente.

De acuerdo con el testimonio pericial que hay en el récord, el choque anafiláctico puede sobrevenir y causar la muerte aunque se hayan tomado todas las precauciones que recomienda la ciencia médica. La prueba subcutánea (*skin test*) puede dar negativo y sin embargo la persona puede ser alérgica o hipersensible al antibiótico específico objeto de la prueba y sufrir un choque anafiláctico si se le administra el antibiótico. Aún más, una persona sin historial de alergia a los antibióticos puede tolerar, sin que le produzca reacción, una, dos o más inyecciones de determinado antibiótico y sin embargo una de ellas, la tercera, cuarta o quinta, puede producirle un choque anafiláctico y morir a consecuencia del mismo.

La causante de los demandantes falleció a consecuencia del choque anafiláctico que sufrió al administrársele la segunda inyección de acromicina al día siguiente de habérsele administrado la primera. ¿Puede inferirse negligencia de estos hechos? ¿Puede decirse que el accidente no hubiera ocurrido a no ser porque medió negligencia de alguien? Por razón de que estas preguntas hay que contestarlas en la negativa, es que hay ausencia de una de las condiciones esenciales para la aplicación de la doctrina de *res ipsa loquitur*. La muerte de una persona a consecuencia de un choque anafiláctico puede ocurrir en cuestión de segundos. Causa el choque y en su consecuencia muchas veces la muerte, la alergia o hipersensibilidad de la persona al antibiótico que se le administra aun cuando no haya mediado negligencia alguna.

Los demandantes también imputaron al Gobierno de la Capital actos específicos de negligencia consistentes en no

haberle hecho la prueba subcutánea a doña Nicolasa Díaz el día que le administraron la segunda inyección de acromicina y en no haber tenido en el Dispensario de Puerta de Tierra, las facilidades técnicas y de equipo para aplicarle un tratamiento adecuado, con el propósito de salvarle la vida en caso de que la inyección produjera un choque anafiláctico, tales como la presencia de un médico, oxígeno, adrenalina y equipo quirúrgico para practicar una traqueotomía. No hay duda de que en el momento de inyectársele acromicina a la señora Díaz el día que sobrevino el choque anafiláctico, no había médicos en el dispensario, ni había oxígeno ni equipo quirúrgico y que aunque había inyecciones de adrenalina la enfermera no se la puso a la paciente porque no tenía órdenes de un médico para así hacerlo.

De acuerdo con el testimonio pericial que hay en el récord, el tratamiento con adrenalina o antihistamínicos, la aplicación de oxígeno o una traqueotomía pueden salvar la vida a una persona víctima de un choque anafiláctico, aunque no siempre logran sobrevivir al choque a pesar de sometérsele al indicado tratamiento. [1]

■ Correspondía a los demandantes probar que la negligencia del Gobierno de la Capital consistente en la falta de las facilidades ya indicadas fue la causa de la muerte de la señora Díaz. Es decir, los demandantes debieron establecer con prueba pericial que la muerte de la señora Díaz sobrevino porque dejó de sometérsele al tratamiento adecuado para recuperar del choque anafiláctico. En otras palabras, los demandantes venían obligados a establecer que la muerte de la señora fue causada por la alegada negligencia del Gobierno de la Capital, o sea, que la señora Díaz hubiera sobrevivido de habérsele aplicado algún tratamiento para contrarrestar la

---

[1] Las publicaciones médicas reportan casos en que a pesar de aplicársele al paciente tratamiento de antihistamina y oxígeno han fallecido a consecuencia del choque anafiláctico. Véase, Feinberg y otros, *Penicillin Anaphylaxis, Non Fatal and Fatal Reactions*, 152 J.A.M.A. 114.

reacción anafiláctica. En ausencia de prueba en contrario no podemos concluir, a no ser a base de conjeturas y especulaciones, que la causa de la muerte de la señora Díaz fue la falta de medios y facilidades en el dispensario para someter a la paciente a un tratamiento contra la reacción alérgica producida por la inyección de acromicina. Faltando en la prueba esta relación causal, no puede prosperar la acción de los demandantes. Véase, *Hauffman* v. *Linquist*, 235 P.2d 34 (1951); Lowell and Williams, *Trial of Medical Practice Cases*, § 11.20, pág. 324; *Sáez* v. *Municipio de Ponce*, 84 D.P.R. 535, 545 (1962).

*Se confirmará la sentencia apelada.*