José R. Rodríguez et al., demandante y recurrente, v. Swimpool Service Co., Inc., demandada y recurrida.

*Número:* R-68-187      *Resuelto:* 2 de abril de 1969

188

R. *Elfren Bernier*, abogado del recurrente; *Martínez Muñoz, Agraít Oliveras & Otero,* abogados de la recurrida.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

PER CURIAM: La cuestión planteada es, en efecto, si la recurrida ha controvertido la inferencia de negligencia resultante de la aplicación de la doctrina de *res ipsa loquitur* a las circunstancias de este caso con prueba de tal naturaleza que una persona razonable no podría derivar dicha inferencia al considerarla. Concluimos que no obstante la prueba aducida por la recurrida, la inferencia subsiste al extremo de justificar la revocación de la sentencia en este caso. La naturaleza y aplicación de la referida doctrina la expusimos en *Ramos* v. *Aut. Fuentes Fluviales,* 86 D.P.R. 603, 612–615 (1962), y la reiteramos en *Soc. de Gananciales, Etc.* v. *Presbyterian Hospital,* 88 D.P.R. 391 (1963).

Como en este caso ninguna de las partes ha elevado ante nos la transcripción del récord, nos debemos atener a las conclusiones de hecho del juez sentenciador. De acuerdo con éstas:

"El día 17 de noviembre de 1968 [*sic*] Pascual Oliveras, empleado de la parte demandada, fue a buscar a los muelles de San Juan seis cilindros de cloro líquido que habían llegado en barco enviados por el vendedor de los mismos y comprados por

la demandada y al recibirlos no notó que ninguno de ellos tuviera defecto alguno y procedió a llevarlos en su camión al negocio de la demandada donde habrían de ser utilizados en el negocio de limpieza y mantenimiento de piscinas y cuando los estaba descargando del camión sintió súbitamente un sonido de escape de gas y el olor a cloro que provenía de uno de los cilindros y lo informó a la esposa del dueño del negocio y ésta le instruyó a que lo montara inmediatamente en el camión y lo llevara y botara en un sitio apartado y el señor Oliveras así lo hizo, llevándose el cilindro inmediatamente del sitio y sumergiéndolo en un lago apartado del sitio de los hechos.

Como consecuencia del escape de gas indicado los demandantes sufrieron daños a distintas plantas de su propiedad por valor de $1,300.00 ya que la residencia de los demandantes estaba localizada al frente del negocio de la demandada, separadas ambas propiedades por una carretera en el Barrio Cupey Alto de Río Piedras.

El demandante declaró que tenía en su propiedad como 100 gallos, pollos y gallinas y como 40 gallos de pelea y de éstos se le murieron 15, los que tenían un valor de $25.00 cada uno y tuvo que sacrificar algunos gallos porque se estaban enfermando.

Que todas las flores y la vegetación se quemó y la grama quedó como si le hubiera pasado un cilindro.

El sector donde la demandada opera el negocio de limpieza de piscinas y en que manipula tanques de cloro gaseoso está localizado en un sector poblado del Barrio Cupey de Río Piedras, Puerto Rico.

La demandada almacena en el referido lugar los productos que utiliza para su negocio, incluyendo cloro en forma líquida envasado en cilindros.

Cuando el gas cloro líquido se escapa de un cilindro pasa a la atmósfera en estado gaseoso.

El cloro gaseoso asún [*sic*] en baja concentración tiene efectos perjudiciales a la vida y la vegetación es muy sensitiva a su contacto.

Cuando el gas cloro se escapó del cilindro en que lo tenía la demandada, ésta pasó el camión donde se encontraba el cilindro por una zona poblada y a través de la carretera."

A la luz de esos hechos, al desestimar la demanda el tribunal de instancia dijo que:

". . . Esa prueba da lugar, de acuerdo con nuestro derecho, únicamente a una inferencia de negligencia bajo la doctrina de Res Ipsa Loquitur que de no ser rebatida por la parte demandada podría entonces generar una causa de acción a favor del demandante. La prueba demostró que el escape de gas no se debió a ningún acto de negligencia de la demandada y que sus actos se limitaron a traer a su negocio un cilindro comprado y manufacturado por un tercero para utilizarlo en su negocio de limpieza de piscinas y que ignoraba al llevarlo allí que tuviera defecto alguno y que súbitamente surgió el escape de gas sin ningún acto de la demandada que lo provocara y que una vez se percató del escape de gas hizo lo que cualquier hombre prudente y razonable hubiera hecho bajo esas mismas circunstancias, dispuso de él en un sitio apartado para evitar la contaminación del lugar."

Apunta el apelante, en síntesis, que el tribunal de instancia incidió en su aplicación de la doctrina de *res ipsa loquitur*. No se nos ha puesto en condiciones de considerar el otro apuntamiento basado en la negativa del tribunal a hacer determinadas conclusiones de hecho adicionales, por falta de la transcripción del récord.

■ El tribunal de instancia concluyó que el cloro embotellado en cilindros es un producto químico que al escaparse en forma gaseosa es lesivo a la vida y la vegetación es muy sensitiva a su contacto. Por lo tanto, toda persona o empresa que lo utiliza en esa forma tiene la obligación de ejercer un grado de cuidado en su manipulación en proporción a su capacidad para producir daño, inclusive el tener el conocimiento pericial y los medios para manejarlo y para evitar que su escape del envase cause daño a personas o a la propiedad. *Wolf* v. *Buzzards Bay Gas Co.*, 228 N.E.2d 94 (Mass. 1967); *Geismar* v. *General Gas Corporation*, 182 So.2d 769 (Ct. App. La. 1966); *Hall* v. *Dexter Gas Co.*, 170

So.2d 796 (Ala. 1965); *Metz* v. *Central Ill. Electric & Gas Co.*, 207 N.E.2d 305 (Ill. 1965).

En *Metz*, supra, la prueba demostró que la explosión en una residencia se debió al escape de gas de una cañería en la calle. Dijo el tribunal que como la cañería estaba bajo "el dominio de la demandada . . . y ese hecho no hubiera ocurrido normalmente si ésta hubiese ejercido el debido cuidado, en ausencia de una explicación adecuada, el accidente, de por sí, constituye razonable prueba de que surgió por falta de cuidado de la demandada . . . . Ésta es, en esencia, la doctrina de *res ipsa loquitur* y su propósito es el permitir prueba de negligencia mediante evidencia circunstancial . . . . Como cualquiera otra prueba, ésta puede ser explicada o rebatida . . . la inferencia . . . no se desvanece cuando se aduce prueba en contrario sino que subsiste con el objeto de ser considerada con toda la otra prueba presentada . . . . Normalmente no ocurren las explosiones de gas. Cuando suceden la inferencia de culpa es justificable . . . aunque la compañía de gas no sea culpable . . . en vista de su superior conocimiento de los hechos . . . tiene la obligación de adelantarse y ofrecer una explicación . . . . Para rebatir la inferencia, la demandada adujo prueba de que realizaba una inspección visual anual de la vegetación que cubría la cañería de gas y que no notó que estuviese marchitada que es la condición resultante de un escape de gas; . . . . También trató de demostrar que la rotura ocurrió en el punto de intersección con la tubería de agua para inferir que el contratista que instaló esta última fue el culpable de la rotura . . . . Había que considerar en contra de esta prueba . . . el hecho de que la prueba de la vegetación carece de valor en invierno y que la rotura no se limitó a un hoyo en el fondo de la cañería pero consistió en una separación de ésta en dos piezas . . . . Como habían pasado varios años desde que se instaló la de agua, resulta difícil creer que la rotura se debió a esa instalación." Por lo tanto, se sostuvo el veredicto del jurado res-

ponsabilizando a la demandada por los daños causados por la explosión.

■ En *Williams* v. *City of Long Beach*, 268 P.2d 1061 (Cal. 1954), en que se reclamaron daños provenientes de una explosión causada por un escape de gas de una cañería de la demandada, el tribunal resolvió que la obligación de aducir prueba para rebatir la inferencia de negligencia que surge de la aplicación de la doctrina de *res ipsa loquitur* en casos como éste no requiere que la demandada establezca que no fue negligente por preponderancia de la prueba. Se sostuvo el veredicto a su favor porque su prueba demostró que la cañería estaba en buenas condiciones, fue debidamente colocada, su rotura pudo obedecer a una causa natural como una condición de asentamiento o movimiento del terreno y porque el escape ocurrió a tan corto plazo que no hubo negligencia en descubrirlo.

■ En *Louisville Gas and Electric Co.* v. *Sanders*, 249 S.W.2d 747 (Ky. 1952), se concluyó que la doctrina de *res ipsa loquitur* se aplica a casos de daños ocasionados a árboles, plantas y grama debido al escape de gas de una cañería cercana. Se confirmó la sentencia en contra de la apelante. Su prueba de que el escape (a) ocurrió lejos de la propiedad; (b) era muy pequeño; y (c) el gas que ocasionó la pérdida no contenía monóxido de carbono de manera que no podía provenir de la cañería en cuestión, fue controvertida por sus propios peritos.

En el caso ante nos resulta aparente que la recurrida manipulaba un gas con riesgo de daños a las personas y a la vegetación; que ocurrió un escape de gas de un cilindro de dicha sustancia mientras se encontraba en su negocio y que para conjurar la situación de peligrosidad que se creó por el referido escape de gas, se dispuso que se trasladase y se trasladó el cilindro en un camión y se sumergió en un lago apartado del lugar de los hechos, actuación ésta que no ami-

noraba sustancialmente el peligro para la vecindad presumiblemente hasta que el cilindro quedase bajo las aguas del lago.

La única prueba aducida por la recurrida para controvertir la inferencia de que los daños probados causados por el escape de gas del cilindro en cuestión se debieron a la negligencia de la recurrida, fue la remoción del cilindro del lugar de los hechos. La demandada no demostró, como era su obligación hacerlo, qué medios utilizó para evitar prontamente el escape de gas o que esto no era factible; que tal escape de gas no era previsible; que no ocurrió por culpa de la demandada y que de todos modos la única providencia disponible en aquel momento era el trasladar el cilindro defectuoso lejos del lugar de los hechos.

En tales circunstancias, concluimos que la demandada no rebatió la inferencia de negligencia con prueba convincente que justificase concluir que los daños se debieron a causas fuera del dominio de la demandada, o a un accidente desgraciado, y que, de todos modos, no se debieron a su negligencia, ya que el escape de gas del cilindro no se debió a ninguna actuación de ella, y, cuando ocurrió, ella actuó con la debida diligencia y tomó medida más efectiva disponible para evitarlo.

*Por lo tanto, se revocará la sentencia dictada y en su lugar se dictará otra condenando a la demandada a pagar $1,675 por concepto de los daños a las plantas y aves del apelante, más $300 de honorarios de abogado.*