AGUSTÍN MARRERO, EFRAÍN MARRERO y RAMÓN RÍOS SANTANA, demandantes y recurrentes, *v.* ALBANY INSURANCE CO., demandada y recurrida.

*Número:* RE-87-589 *Resuelto:* 5 de diciembre de 1989

828

*Jorge Meléndez Vela* y *José Davison Lampón,* abogados de los recurrentes; *Alvaro R. Calderón, Jr.,* abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El presente recurso nos permite explorar el tema de la aplicabilidad de la doctrina de *res ipsa loquitur* a casos de incendios. Al confirmar la sentencia recurrida que declaró sin lugar la demanda radicada en el caso de epígrafe, resolvemos que la referida doctrina *no* es de aplicación .en situaciones en que se desconoce totalmente la causa del incendio ocurrido; *procediendo su aplicación únicamente en situa-*

*ciones en que, demostrada la causa efectiva del incendio, la misma o las circunstancias y hechos particulares del caso indican que dicha causa, de ordinario, no ocurre a menos que haya mediado negligencia.*

## I

Como consecuencia de un incendio que se desarrollara en la medianoche del 5 al 6 de enero de 1985 en una planta de recauchamiento propiedad de Toa Alta Retreading, Inc. localizada en el primer piso de un edificio de dos (2) plantas propiedad precisamente de la mencionada corporación, los dueños de varios locales comerciales en dicho inmueble,(1) arrendatarios de la citada corporación, demandaron a la compañía de seguros de ésta, la demandada recurrida Albany Insurance Co., en reclamación de los daños sufridos por ellos como resultado del incendio ocurrido. La mencionada compañía de seguros negó responsabilidad alguna.

Trabada la controversia, y luego de celebrada la correspondiente vista en su fondo, el Tribunal Superior de Puerto Rico, Sala de Bayamón, originalmente dictó sentencia declarando con lugar la demanda radicada.(2) En lo pertinente determinó dicho tribunal que, aun cuando se desconocía el origen y causa del fuego que se desarrollara en la planta de recauchamiento propiedad del asegurado de la compañía de seguro demandada, dicho incendio "fue causado por la omisión negligente de la Toa Alta Retreading Co. al no tener una instalación eléctrica adecuada para operar una planta de recauchamiento" y que se podía "inferir o deducir válidamente

---

(1) La parte demandante se compone de Agustín Marrero, dueño de una lavandería; Efraín Marrero, dueño del club nocturno Terraza Ball Room, y Ramón Ríos Santana, dueño de una ferretería y cafetería.

(2) En vista de la sentencia dictada, el tribunal de instancia condenó a la compañía de seguros a pagar a los demandantes las siguientes sumas de dinero: al demandante Agustín Marrero la suma de $1,260; a Efraín Marrero la cantidad de $28,880, y al demandante Ramón Ríos Santana la suma de $30,200.

que la inadecuación de la instalación eléctrica pudo permitir que una chispa saltara hacia el 'ambiente' del local impregnado de gases inflamables y generara el incendio".(3)

Radicada en tiempo por la parte demandada una moción en solicitud de determinaciones de hechos adicionales y reconsideración, el tribunal de instancia —mediante sentencia a esos efectos de fecha 27 de octubre de 1987— reconsideró la que había dictado anteriormente y procedió a declarar sin lugar la demanda radicada mediante "sentencia enmendada" a esos efectos. En esta ocasión razonó el foro de instancia que la parte demandante, si bien había presentado prueba sobre la clase de instalación eléctrica con que contaba la planta de recauchamiento, no había presentado evidencia "sobre las causas del incendio".(4)

Inconforme, la parte demandante acudió en revisión ante este Tribunal, imputándole al tribunal de instancia haber errado:

■ ... al modificar las conclusiones de hechos y de derecho que dieron margen a su sentencia original que declaró con lugar la demanda y las cuales resumiremos y discutiremos más adelante.

■ ... al declarar, sin lugar la demanda en su sentencia enmendada. Solicitud de revisión, págs. 3–4.

Decidimos expedir el auto de revisión solicitado. Estando en condiciones de resolver el mismo, procedemos a así hacerlo.

_____

(3) Véase la conclusión de derecho Núm. 2 de la sentencia dictada el 14 de abril de 1987, pág. 5.

(4) A esos efectos, concluyó el tribunal de instancia que para

"... poder inferir o deducir un hecho hay que sentar las bases. Primero, los demandantes tenían que establecer que el dueño del edificio fue negligente al permitir condiciones de alto riesgo en su negocio. No trajeron prueba a esos efectos, razón por la cual no podemos inferir la negligencia, máxime cuando el fuego se inició a media noche cuando no había nadie en el taller." Sentencia de 27 de octubre de 1987, pág. 6.

## II

■ En el alegato que radicara, la parte demandante recurrente señala que erró el foro de instancia al no aplicar al caso de autos la doctrina de *res ipsa loquitur*.([5]) En términos generales, la aplicabilidad de la citada doctrina depende de la concurrencia de *tres (3) requisitos*, a saber: (1) *el accidente deber ser de tal naturaleza que, de ordinario, no ocurre en ausencia de negligencia por parte de una persona*; (2) el mismo debe ser causado por una agencia o instrumento dentro del control exclusivo de la parte demandada, y (3) dicho accidente no puede haber ocurrido debido a acción involuntaria alguna o negligencia del que demanda o reclama. *Martínez Mattei v. Montañez*, 98 D.P.R. 726, 730 (1970); *Díaz Mojica v. Gob. de la Capital*, 93 D.P.R. 467, 471 (1966); *Goenaga v. West Indies Trading Corp.*, 88 D.P.R. 865, 893 (1963); *Soc. de Gananciales, Etc. v. Presbyterian Hosp.*, 88 D.P.R. 391, 397 (1963); *Castro v. Municipio de Guánica*, 87 D.P.R. 725, 730 (1963); *Ramos v. Aut. Fuentes Fluviales*, 86 D.P.R. 603, 615 (1962); *Cintrón v. A. Roig, Sucrs.*, 74 D.P.R. 1028, 1036 (1953); *Hermida v. Feliciano*, 62 D.P.R. 55, 57 (1943).

■ Debe mantenerse presente, sin embargo, que la aplicación de la referida doctrina sólo crea una inferencia permisible de negligencia que autoriza —pero no obliga— al juzgador a concluir que hubo negligencia *y que únicamente cuando el demandante establece los hechos que justifican la aplicación de la doctrina es que éste queda relevado de cumplir con la regla general que le exige probar la negligencia*

---

([5]) A pesar de que en el recurso de revisión radicado, la parte demandante recurrente señaló, y discutió, como error en su segundo señalamiento, la no aplicación por el foro de instancia de la doctrina de *res ipsa loquitur* —adoptando por referencia dicha discusión en el alegato que radicara— *la parte demandada recurrida, incomprensiblemente, no discute en su alegato dicho tema.*

*de la parte demandada*, pasando entonces a esta última el peso de demostrar que empleó el debido cuidado. Véanse: *Ramos v. Aut. Fuentes Fluviales*, ante, pág. 614; *Soc. de Gananciales, Etc. v. Presbyterian Hosp.*, ante; H.M. Brau Del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da ed. rev., San Juan, Pubs. J.T.S., 1986, Vol. I, págs. 395–396.

## III

■ Un examen de nuestras decisiones revela una ausencia de precedente sobre el punto específico ante nuestra consideración. No así en la jurisdicción federal y en las distintas jurisdicciones estatales norteamericanas. De un análisis de las decisiones emitidas en dichas jurisdicciones se desprende que la *regla general* es a los efectos de que la doctrina de *res ipsa loquitur* no es aplicable a situaciones en que se desconoce totalmente la causa del incendio ocurrido o a aquellas en donde la causa señalada es el resultado de meras conjeturas. *McKinney Supply Company v. Orovitz*, 96 So. 2d 209 (Fla. 1957); *Sharon v. Luten*, 165 So. 2d 806 (Fla. 1964); *Wilson v. Paul*, 176 N.W.2d 807, 809 (Iowa 1970); *Northwestern Nat. Ins. v. Raid Quarries Corp.*, 249 N.W.2d 640 (Iowa 1977); *Fischer, Inc. v. Standard Brands, Inc.*, 204 N.W.2d 579 (Iowa 1973); *Dodge v. McFall*, 45 N.W.2d 501 (Iowa 1951); *Highland Golf Club v. Sinclair Refining Co.*, 59 F. Supp. 911 (Iowa 1945); *In re Morse Estate*, 391 P.2d 117 (Kansas 1964); *Board of Ed., Etc. v. Herb's Dodge Sales, Etc.*, 435 N.Y.S.2d 179 (App. Div. 1981); *Smith v. Vanier*, 307 P.2d 539 (Okl. 1957); *Gutknecht v. Wagner Bros. Moving & Storage Co.*, 266 S.W.2d 19 (Mo. 1954); *Appalachian Insurance Company v. Knutson*, 242 F. Supp. 226 (Mi. 1965); *Menth v. Breeze Corporation*, 73 A.2d 183 (N.J. 1950); *Central Stikstof Verkoopkanter v. Pensacola Port Auth.*, 316 F.2d 189 (5to Cir. 1963); *Wehkamp v. Garden City*, 356 P.2d

826 (Kan. 1960); *Emigh v. Andrews*, 191 P.2d 901 (Kan. 1948).

 Por el contrario, la referida doctrina sí ha sido aplicada a situaciones en que, demostrada la causa efectiva del incendio, las circunstancias y hechos particulares del caso indican o tienden a sostener que dicha causa, de ordinario, no ocurre a menos que haya mediado negligencia. *Emigh v. Andrews*, ante; *Northwestern Nat. Ins. v. Raid Quarries Corp.*, ante; *Wehkamp v. Garden City*, ante; *Dodge v. McFall*, ante. Esto es, se requiere de la parte demandante que en esta clase de situaciones cumpla —en adición a los restantes dos— con *el primero* de los tres (3) requisitos que tradicionalmente se exigen para la aplicación de la doctrina de *res ipsa loquitur. Martínez Mattei v. Montañez*, ante; *Díaz Mojica v. Gob. de la Capital*, ante.

La razón de ser de la norma antes expresada realmente no es muy difícil de comprender. Como certeramente se señalara en *Menth v. Breeze Corporation*, ante, pág. 186:

> . . . *la doctrina de "res ipsa loquitur" es poco aplicada en casos de fuegos.* . . . Las razones para ello no son difíciles de entender. La causa de un fuego es a menudo, desconocida; *fuegos ocurren tanto en situaciones en donde se ejerció el debido cuidado como cuando no.* Cuando un fuego se origina en la propiedad del demandado eso por sí solo no es prueba de que fue iniciado por él o a consecuencia de su negligencia . . . . La *regla general* es que la destrucción de propiedad por un fuego, ya fuere en el lugar donde se originó o en áreas adyacentes *no levanta por sí sola* la presunción de negligencia en el origen o en el manejo del fuego, *a menos que se den circunstancias especiales* que conduzcan a la conclusión razonable de que faltó el debido cuidado. (Traducción nuestra, énfasis suplido y citas omitidas.)[6]

---

[6] Véase, en adición, W.P. Keeton, *Prosser and Keeton on Torts*, 5ta ed., Minnesota, West Publishing Co., 1984, Sec. 39, pág. 246: "[t]here are many acci-

## IV

En el caso de autos *no* se dan esas circunstancias especiales. La parte demandante en el presente caso *no* cumplió con su obligación de establecer los hechos que justifican la aplicación de la doctrina de *res ipsa loquitur*. Se desconoce totalmente la causa exacta o específica del incendio. La mera demostración de que la instalación eléctrica era una "normal y corriente" no arroja luz alguna sobre el origen del siniestro. Debe mantenerse presente que el fuego comenzó a la medianoche; esto es, cuando la planta de recauchamiento no estaba en operación. La prueba presentada no estableció relación causal alguna entre la existencia de una instalación eléctrica normal y corriente en una planta de esa naturaleza y el fuego originado *horas después* de haber cesado operaciones la referida planta.

▬▬▬ *Conviene recordar que la doctrina de "res ipsa loquitur" no promueve inferencia alguna sobre la causa del evento que ocasionó el daño. Northwestern Nat. Ins. v. Raid Quarries Corp.*, ante, pág. 644. Lo más que sostiene la evidencia presentada por la parte demandante es que en la noche en cuestión un fuego cuya causa se desconoce destruyó la estructura. La posibilidad de que la instalación eléctrica inapropiada fuera la causa del fuego constituye una *mera conjetura*, lo cual no es suficiente para la aplicación de *res ipsa loquitur. Wehkamp v. Garden City*, ante, pág. 831. Ante esta situación *no* se cumple, por lo tanto, con el primer requisito para la aplicación de la doctrina, esto es, que el accidente sea de tal naturaleza que de ordinario no occurre en ausencia de negligencia. *Martínez Mattei v. Montañez*, ante. Máxime

---

dents which as a matter of common knowledge, occur frequently enough without anyone's fault. A tumble downstairs, . . . a tire of an ordinary automobile which blows out, a skidding car, . . . *a fire of unknown origin,* will not in themselves justify the conclusion that negligence is the most likely explanation; and *to such events "res ipsa loquitur" does not apply."*

cuando en el presente caso, según ello surge de la propia prueba documental que presentara la parte demandante recurrente, la Policía de Puerto Rico luego de la investigación correspondiente concluyó que, no obstante desconocerse el origen del incendio, "se presume que hubo mano criminal en el mismo".[7] Existiendo "alguna otra causa probable del accidente de la cual pueda inferirse que no hubo negligencia", *no* procede la aplicación de la doctrina de *res ipsa loquitur. Ramos v. Aut. Fuentes Fluviales*, ante, págs. 615–616. Véase, además, *Martínez Mattei v. Montañez*, ante.

Por las razones antes expresadas, *procede la confirmación de la sentencia recurrida. Se dictará sentencia de conformidad.*

El Juez Asociado Señor Negrón García emitió opinión disidente, a la cual se une el Juez Asociado Señor Ortiz.

—O—

Opinión disidente del Juez Asociado Señor Negrón García, a la cual se une el Juez Asociado Señor Ortiz.

I

Toa Alta Retreading, Inc. era dueña de un edificio de dos (2) plantas divido en varios locales independientes. En el primer nivel tenía y operaba una planta de recauchamiento y

---

(7) Véase Informe de Delito Tipo II, Núm. 004, Querella Núm. 85-7070-00034, de fecha 5 de enero de 1985 que fue admitido en evidencia, como prueba de la parte demandante recurrente —*Exhibit* 1— en la vista celebrada ante el tribunal de instancia el día 19 de marzo de 1987.

Surge, igualmente, de dicho informe que esa noche se celebraba en el segundo piso del edificio en controversia, en el club nocturno Terraza Ball Room, una boda a la cual asistían quinientas (500) personas. No resulta difícil concluir que en la noche del fuego merodearon numerosas personas por el lugar y que no podemos asegurar que el local donde se inició el siniestro estuviera, por lo tanto, bajo el control absoluto del demandado.

venta de gomas, y dos (2) establecimientos comerciales arrendados a Ramón Ríos Santana, a saber, una ferretería y cafetería llamados "Villa Toa". En el segundo nivel, también alquilados, estaba ubicado el club nocturno de Efraín Marrero, conocido como "Terraza Ball Room", y una barbería de Agustín Marrero.

En la noche del 6 de enero de 1985, aproximadamente a las 12:00 P.M., *se inició un incendio en su planta de recauchamiento* que rápidamente se propagó y destruyó todo el inmueble. La causa específica de la ignición se desconoce. *Ninguno de los arrendatarios tuvo que ver con el origen del siniestro.* En el Tribunal Superior, Sala de Bayamón, éstos demandaron a Albany Insurance Co. (Albany), aseguradora de Toa Alta Retreading, Inc., para recobrar las pérdidas sufridas como consecuencia de la conflagración que arrasó sus establecimientos comerciales. Albany contestó, negó negligencia y responsabilidad.

Previo trámites de rigor, se ventiló la vista en su fondo. Los demandantes Marrero *et al.* ofrecieron el testimonio pericial del ingeniero industrial Dr. Carlos V. Wheeler y sometieron en evidencia su informe escrito contentivo de la valorización de los daños, varias fotografías y el Informe de Incendio del Servicio de Bomberos. El doctor Wheeler testificó que la instalación eléctrica de la planta de recauchamiento era de *uso doméstico* y que en este tipo de planta o de naturaleza similar era indispensable que se proveyera una instalación eléctrica *especial* de propiedades ignífugas. *Aquí, ni las cajas de los interruptores o tubos estaban sellados, a pesar de que en el local se laboraba con líquidos y gases altamente inflamables y explosivos.* La demandada Albany objetó su testimonio, aceptando que se limitara al área cubierta en el informe y a que "'las instalaciones eran normales

y corrientes'".(1) Concluida la prueba de los demandantes Marrero *et al.*, Albany sometió el caso *sin ninguna prueba*.

El foro de origen declaró inicialmente *con lugar* la demanda. Albany pidió la reconsideración y, conjuntamente, solicitó la eliminación de varias determinaciones de hecho.

El tribunal, a raíz de esa moción, mediante sentencia enmendada se retractó y declaró *sin lugar* la demanda. Al hacerlo, descartó la conclusión del doctor Wheeler en torno a que la instalación y cablería de la planta era deficiente e inapropiada. Se fundamentó en que el doctor Wheeler declaró a los únicos fines de establecer la cuantía de los daños ocasionados por el fuego —según contratado— y no como perito sobre las posibles causas del incendio. Sobre este extremo, en lo pertinente, consignó que su testimonio *sólo estableció* "que la planta de recauchamiento tenía una instalación eléctrica 'normal y corriente'. Dicha prueba no fue rebatida. El Dr. Wheeler no declaró sobre las causas del incendio". Sentencia enmendada, pág. 2. Como consecuencia de ese enfoque, el ilustrado foro de instancia dictaminó que los demandantes Marrero *et al.* fracasaron en probar que Toa Alta Retreading, Inc. —como dueña del edificio y de la planta de recauchamiento— "fue negligente al permitir condiciones de alto riesgo en su negocio . . . razón por la cual no podemos inferir la negligencia, máxime cuando el fuego se inició a media noche cuando no había nadie en el taller". Íd., pág. 6.

A solicitud de los demandantes Marrero *et al.* expedimos para revisar dicho dictamen bajo la doctrina de *res ipsa loquitur*. La tarea requiere repasar someramente varios principios elementales pertinentes.

---

(1) Véase el escrito de dicha parte denominado "Solicitud de enmienda a las determinaciones y/o determinaciones adicionales y/o reconsideración", fechado 7 de mayo de 1987.

## II

Nuestro sistema de derecho es rogado y de carácter adversativo. Como norma general, en materia de responsabilidad civil extracontractual, el hecho productor del daño no se presume. La mera ocurrencia de un accidente, sin más, no constituye prueba concluyente demostrativa de conducta lesiva antijurídica de otro, elemento indispensable para engendrar responsabilidad. Jaime Santos Briz habla sobre este tema en M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Rev. Der. Privado, 1984, T. XXIV, pág. 104. Véase W.P. Keeton, *Prosser and Keeton on Torts*, 5ta ed., Minnesota, West Publishing Co., 1984, Sec. 39, págs. 242–262. Quien alegadamente sufre un daño por la negligencia de otro tiene "la obligación de poner al tribunal en condiciones de poder hacer una determinación clara y específica sobre negligencia mediante la presentación de prueba a esos efectos". *Cotto v. C.M. Ins. Co.*, 116 D.P.R. 644, 651 (1985).

La responsabilidad civil del actor puede establecerse mediante prueba directa o *circunstancial*.(2) Procesalmente hablando, la doctrina de *res ipsa loquitur* no es más que una variante de esta última. *Ramos v. Aut. Fuentes Fluviales*, 86 D.P.R. 603, 612 (1962). Su efecto procesal consiste en producir a favor de la parte actora una *inferencia permisible* de negligencia en el orden evidenciario que el legitimado pasivamente deberá controvertir. *Castro v. Municipio de Guánica*, 87 D.P.R. 725, 730 (1963). Una inferencia no es más que una "deducción que de los hechos probados hace en su discernimiento el juez o jurado, sin que al efecto medie mandato expreso de la ley. *Una inferencia deberá fundarse en la de-*

---

(2) La prueba circunstancial conlleva presentar prueba sobre un hecho del cual pueda razonablemente inferirse la existencia de otro. H.M. Brau Del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da ed. rev., San Juan, Pubs. J.T.S., 1986, Vol. I, pág. 394.

*ducción que de un hecho probado justificaren la considera-ción de las ordinarias propensiones o pasiones humanas,* las propensiones o pasiones de la persona cuyo acto se discute, el curso de los negocios o *el de la naturaleza".* (Énfasis suplido.) H.M. Brau Del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico,* 2da ed. rev., San Juan, Pubs. J.T.S., 1986, Vol. I, pág. 394. Se trata, pues, de una inferencia de carácter rebatible. *Rodríguez v. Swimpool Ser. Co., Inc.,* 97 D.P.R. 187, 193 (1969).

La inferencia *iurius tantum* tampoco le ata las manos al juzgador de hechos en lo que respecta a la aquilatación posterior de evidencia presentada por la parte demandada, aun cuando entre en operación la susodicha doctrina. El tribunal podrá arribar a sus propias e independientes conclusiones. *Matta v. Pueblo Super Market,* 80 D.P.R. 514, 517 (1958).

En resumen, para invocar la doctrina de *res ipsa loquitur* le incumbe al inceptor de la acción demostrar ciertos hechos preliminares. *Villarán v. Loíza Sugar Co.,* 43 D.P.R. 604, 609 (1932). Su aplicabilidad dependerá de la concurrencia de los tres (3) requisitos siguientes: "(a) el accidente debe ser de tal naturaleza que . . . ordinariamente no ocurra en ausencia de negligencia de parte de alguna persona; (b) debe ser causado por una agencia o instrumento dentro del control exclusivo del demandado; (c) y no puede haber sucedido debido a . . . acción [vo]luntaria alguna o negligencia del demandante". *Martínez Mattei v. Montañez,* 98 D.P.R. 726, 730 (1970). Véanse: *Ramos v. Aut. Fuentes Fluviales,* supra; *Cintrón v. A. Roig, Sucrs.,* 74 D.P.R. 1028, 1036 (1953); *Hermida v. Feliciano,* 62 D.P.R. 55 (1943).

Cabe precisar que el *quantum* de la prueba requerido para activarla *variará según el trasfondo fáctico.* Ello se explica a base de que la regla

"... surge de *la inherente naturaleza y carácter del acto* causante del daño y de la razonable probabilidad a ser inferida del carácter del accidente mismo. *Tiene su fundamento en el*

*conocimiento común y la experiencia general basada ésta en las circunstancias genéricas peculiares a la clase de causas físicas que produjeron el accidente en cuestión.*

La presunción *surge de la doctrina de la probabilidad.* Se pesa y se mide el futuro con el pasado y se crean presunciones a base de las experiencias pasadas. *Lo sucedido en el pasado bajo las mismas condiciones, probablemente ocurrirá en el futuro, y se presumirán los resultados ordinarios y probables hasta que no se demuestre lo contrario.* Se usa la frase para expresar la idea de que cuando se demuestra que un accidente es de tal naturaleza, que a la luz de la experiencia común y ordinaria es inexplicable[,] excepto como resultado de negligencia, entonces se presume o se infiere la negligencia. *La doctrina no descansa sobre datos establecidos. No se aplica cuando existe prueba directa en cuanto a la causa precisa de la lesión y surgen todos los hechos y circunstancias que rodean el suceso.*" (Énfasis suplido y en el original.) *Soc. de Gananciales, Etc. v. Presbyterian Hosp.*, 88 D.P.R. 391, 401 (1963).

Notamos, pues, *que el aumento o disminución de probabilidad de negligencia está correlacionado a la experiencia ordinaria del hombre en cuanto al evento.* La doctrina de *res ipsa loquitur* no sería aplicable si los hechos y circunstancias del caso justifican la conclusión de *que existe otra causa probable* de la cual se pueda inferir que no hubo negligencia por parte del demandado. En estos casos es imperativo dejar la menor cantidad de inferencias posibles al juzgador de hechos, pues como es sabido, la doctrina no sería aplicable frente a un récord totalmente huérfano de prueba en qué fundar la inferencia de negligencia del demandado. *Vda. de Viera v. Tribunal Superior*, 93 D.P.R. 503, 507 (1966). Así evitamos que la inferencia se transforme en meras especulaciones, insuficientes para imponer responsabilidad. *Ortiz v. Fleming Motors, Inc.*, 99 D.P.R. 668, 675 (1971). La doctrina de *res ipsa loquitur* requiere como mínimo la necesidad de establecer una probable relación causal entre el daño y la

negligencia. *Burgos Quiñones v. Autoridad Fuentes Fluviales*, 90 D.P.R. 613, 619 (1964).

¿Se cumplió con ese mínimo en el caso de autos? A tono con el lineamiento doctrinario expuesto, no albergamos duda de que los demandantes Marrero *et al.* presentaron suficientes hechos para activar la doctrina. Primero, establecieron que el fuego *comenzó* en la planta de recauchamiento en el local bajo el *control exclusivo* de Toa Alta Retreading, Inc. Segundo, *probaron también que nada tuvieron ellos que ver con el origen del siniestro.* No hay un ápice evidenciario con el cual se sostenga contra ellos negligencia o atribuirles conjeturalmente posibles actuaciones de terceros por razón de una boda que se celebraba en la "Terraza Ball Room" del segundo piso. Y tercero, se trata de un suceso que nuestra doctrina ha estimado como que "'la mayoría de los [fuegos] son atribuibles a negligencia . . .'". (Énfasis suprimido.) *Soto v. Tropigas de P.R.*, 117 D.P.R. 863, 869 (1986). En otras palabras, un incencio es un evento que de ordinario no ocurre a menos que medie negligencia de alguna persona.

La doctrina de *res ipsa loquitur* se ha aplicado a reclamaciones por incendios donde se desconocen las causas específicas del siniestro. Tal extensión, naturalmente, ha dependido de las circunstancias particulares del caso. El *quantum* de la prueba requerido varía de jurisdicción en jurisdicción, según la naturaleza del accidente, unido a la experiencia humana en cuanto al mismo. Véanse: *Gicking v. Kimberlin*, 215 Cal. Rptr. 834 (1985); *Hickley v. La Mesa R. V. Center, Inc.*, 205 Cal. Rptr. 22 (1984); *Evans v. Van Kleek*, 314 N.W.2d 486 (Mich. App. 1981); *Blue Ridge Ins. Co. v. Belle Alliance Homes*, 408 So. 2d 417 (La. App. 1981); *Snow v. Duke Power Co.*, 256 S.E.2d 227 (N.C. App. 1979); *Snow v. Duke Power Co.*, 250 S.E.2d 99 (N.C. App. 1979); *Pappas v. Carson*, 123 Cal. Rptr. 343 (1975); *Smith v. General Paving Company*, 321 N.E.2d 689 (Ill. App. 1974); *St. Paul Fire and Marine Insurance Co. v. Watkins*, 495 P.2d 265 (Or. 1972); *Romero v.*

*Butcher Air Conditioning Company*, 255 So. 2d 132 (La. App. 1971); *Savill v. Hodges*, 460 S.W.2d 828 (Ky. 1970); Anotación, *Res Ipsa Loquitur as to Cause of or Liability for Real-Property Fires*, 21 A.L.R.4th 929 (1983); *Bankers Mutual Insurance Company v. Friedlander*, 262 A.2d 606 (Colum. App. 1970); *Plato Reorg. Sch. D. R–5 v. Intercounty Elec. Coop.. A.*, 425 S.W.2d 914 (Mi. 1968); *Valantine v. Ratner*, 233 P.2d 667 (Dist. Ct. 1951); *Miller v. Elgin, Joliet & Eastern Ry. Co.*, 177 F.2d 224 (7mo Cir. 1949).

## III

Según expuesto, no se discute que el fuego se originó en la planta de recauchamiento de la asegurada Toa Alta Retreading, Inc. Es menester, pues, examinar sus características operacionales. Una fábrica de recauchamiento es, por su naturaleza, una actividad *industrial*. Ello no se cuestiona. A tal efecto, el equipo con que contaba Toa Alta Retreading, Inc. consistía de una "m[á]quina de recauchamiento de gomas, gomas nuevas, m[á]quina de montar gomas, tanques, sillas, tanques de enfriamiento, compresores y otros". Informe de Incendio del Servicio de Bomberos, *Exhibit* III, pág. 45. *En términos generales, el proceso de recauchamiento exige una serie de operaciones con químicos inflamables en hornos de alta temperatura y presión. Caplan v. Bensalem Township Zoning Board of Adjust.*, 141 A.2d 578, 580 (Pa. 1958), lo describe así:

> "Luego de que la goma usada se inspecciona para determinar su posible restauración, se monta en una rueda pulidora y se desgasta por fricción por el contacto frenado con otra rueda de clavos para remover el remanente de la vieja superficie de rodadura y también para proveer una superficie áspera donde luego se aplica el *cemento adhesivo*. Tiras de goma sintética prefabricadas, manufacturadas en otro lugar, se colocan luego alrededor de la goma para constituir el material de la nueva superficie de rodadura. La llanta posteriormente se co-

loca en una máquina de moldear donde permanece por una hora *bajo condiciones de alta presión y temperatura* por el cual el material construido es estilizado, curado y se adhiere al cuerpo del anterior neumático. Después de esto, sólo resta pulir el exceso de goma y pintar los flancos del neumático para impartirle un toque terminado." (Traducción nuestra y énfasis suplido.)

Las complejidades del proceso antes descrito está inexorablemente atado a la materia prima básica usada: *el caucho*. Su transformación, por sus peculiaridades físicas, es una cuestión de carácter científico y, como tal, susceptible de conocimiento judicial. Regla 11(A)(2) de Evidencia, 32 L.P.R.A. Ap. IV; *Ortiz v. Peña*, 108 D.P.R. 458, 464 (1979); *Trinta v. Tribunal Superior*, 87 D.P.R. 400, 427 (1963); *Lluberas v. Mario Mercado e Hijos*, 75 D.P.R. 7, 19–20 (1953); *Morales v. Martínez*, 39 D.P.R. 549, 556 (1929). Veamos.

En su estado *normal inalterado* el caucho no puede ser utilizado para crear un neumático. Requiere de un procesamiento especial que le provea unas cualidades químicas y físicas que lo hagan apto para su utilización en las carreteras. Este procesamiento se conoce como *vulcanización*, que no es otra cosa que la acción y efecto de "[c]ombinar azufre con la goma elástica para que [é]sta conserve su elasticidad en frío y en caliente". *Diccionario de la Lengua Española*, 20ma ed., Madrid, Ed. Espasa-Calpe, 1984, T. II, págs. 1399–1400. El mismo se efectúa en las máquinas de moldear. Por ello quizás estos artefactos responden también al nombre de "prensas de vulcanización" que pueden variar en estilo y en tamaño. Véase *Recauchatado (Recauchamiento) de Llantas o Gomas*, Sección de Análisis de Salarios y Estudios Especiales, Negociado de Estadísticas, Departamento del Trabajo, Publicación Núm. 61 de 2 de febrero de 1955, págs. 1–6. Para vulcanizar se mezcla el caucho semicrudo o sintético con el azufre. La concordancia de estos dos (2) elementos imparte a la goma cualidades físicas y estructurales supe-

riores necesarias para su utilización en el pavimento. El caucho vulcanizado conserva su elasticidad en el frío y permite que sea más resistente al calor. Ello incluso evita que se derrita. También precluye que se disuelva al contacto con otros líquidos, por ejemplo, la gasolina. J.H. Meidl, *Flammable Hazardous Materials*, Nueva York, Glencoe Press Fire Science Series, 1972, pág. 170.

El fuego o combustión consiste en una oxidación acelerada acompañada de calor y fulguración. Según los principios elementales químicos, tres (3) factores deben concurrir para ocasionarlo: *oxígeno, combustible o materia inflamable, y calor*. La reacción molecular en cadena de estos agentes en el argot científico comúnmente se denomina "triángulo del fuego" (*fire triangle*). D.J. Berry, *Fire Litigation Handbook*, Nat. Fire Prot. Assn., 1984, págs. 172–175; Meidl, *op. cit.*, págs. 1–2; L.S. Bush y J. Melaughlin, *Introduction to Fire Science*, California, Glencoe Press, 1974, pág. 50; J.L. Bryan, *Fire Suppression and Detection Systems*, California, Glencoe Press, 1974, págs. 1–5. *De faltar cualesquiera de estos elementos integrantes del triángulo, un fuego sencillamente no puede originarse*. Meidl, *op. cit.* Esta es la razón por la cual los métodos clásicos para extinguirlo están fundamentados en remover su fuente de oxígeno, combustible o calor. Muchas veces bastaría solamente reducir la temperatura hasta el punto de evitar que la materia inflamable se vaporice, pues sólo en su estado gaseoso puede prenderse en llamas. Ahí radica la importancia de conocer el grado de volatilidad de un combustible. Bryan, *op. cit.*, pág. 2; Meidl, *op. cit.*, pág. 157.

La operación antes descrita pone de manifiesto cómo el proceso de recauchamiento es de naturaleza industrial que envuelve un *riesgo peculiar de incendio mayor* por tres (3) razones principales. *Primero*, el uso del azufre, elemento comúnmente indispensable para el adecuado reacondicionamiento de la llanta. Meidl, *op. cit.*, pág. 169. *Segundo*, la fase

de eliminación de la banda original de rodamiento mediante una raspadora cuyo proceso emite un polvo de caucho *sumamente inflamable*. Ello debe efectuarse en un cuarto aislado de la planta, con el fin de reducir el riesgo de incendio. *Recauchatado (Recauchamiento) de Llantas o Gomas, op. cit.*, pág. 5. Por *último*, el cemento adhesivo utilizado también es de naturaleza flamable. Estas circunstancias y riesgos mayores requieren medidas especiales precautorias. Definitivamente, la presencia de las substancias combustibles susceptibles de ignición al aplicársele cierto grado de temperatura lo justifican.(3)

Con este cuadro en mente, es evidente que incidió el foro de instancia al negarse a aplicar la doctrina de *res ipsa loquitur. Hemos visto cómo una planta de recauchamiento es una operación que conlleva el uso de equipo que genera intenso calor y la combinación de gomas y materiales inflamables. Ello aumenta las probabilidades de un incendio.* La manufactura del neumático requiere, del hombre prudente y razonable, el establecimiento de una serie de precauciones que reduzcan esa posibilidad. En el caso de autos, la prueba no contradicha reveló que *"la planta de recauchamiento tenía una instalación eléctrica 'normal y corriente'"*. Se colige, pues, que la instalación existente utilizada por Toa Alta Retreading, Inc. —doméstica, no industrial— era *insuficiente* desde el punto de vista de las com-

---

(3) En atención a estos peligros inherentes que acarrea la manufactura de este tipo de neumático, el Art. 2 (2.4–2.5) del *Fire Prevention Code* —recomendado por el American Insurance Association— sugiere, como medidas precautorias, la instalación en el cuarto aislado donde se ejecuta la raspadura del neumático de un sistema amplio de recolección de polvo y una puerta que selle automáticamente en caso de incendio. Recomienda, además, un sistema adecuado de ventilación en el área en que se aplique el cemento adhesivo o se mezclen solventes combustibles. Exige de igual forma la instalación de un sistema de rociadura automática (*sprinkler system*). Véase *Rubber Product Manufacturing, Fire Protection Handbook*, Nat. Fire Prot. Assn., 1981, Sec. 8, Cap. 4, págs. 8–22 y 8–29.

plejas labores industriales que realizaba en el establecimiento.

Una nota final cautelar. No intentamos ofrecer una explicación *exacta del origen del siniestro.* Como anticipamos, ésta se desconoce. La doctrina de *res ipsa loquitur* no lo exige. Requerirlo desnaturalizaría su razón de ser.

Nos hemos extendido en esta ponencia para demostrar por qué consideramos jurídicamente equivocada la opinión mayoritaria del Tribunal. El cuadro evidenciario —según los hechos y la experiencia general— es suficiente para activar la doctrina por su razonable probabilidad.

Por los fundamentos expuestos, disentimos. Dictaríamos sentencia mediante la cual se impusiera responsabilidad a Albany Insurance Co. y ordenaríamos al foro de instancia que dilucidara los aspectos relativos a la valoración y adjudicación de daños.